STATE OF NORTH DAKOTA EX REL. J. C. JOHNSON v. THORWALD MOSTAD, Oliver Saugstad, and D. J. Mahoney, as Directors of School District No. 10 in and for said Ward County, North Dakota.

(158 N. W. 349.)

Statutes — construction of — school boards — common school districts — children — school accommodation for — distance to travel — measured how — roads passable and usually traveled.

1. In construing § 1188 of the Compiled Laws of 1913, which provides that

the school boards of the various common school districts shall, upon the petition of those charged with the support and having the care and custody of nine or more children of school age, furnish school accommodations for such children within a distance of $2\frac{1}{2}$ miles of their homes, such $2\frac{1}{2}$ mile distance is to be measured by the roads which are actually opened and passable, and not as the crow flies, or by taking into consideration section lines which are set apart by § 1920 as highways, but which are not in their present condition passable and have not been actually opened for travel.

**School boards — children of adjacent districts — may allow to attend school — not compulsory — defense — other districts.**

2. Although, under the provisions of § 1179 of the Compiled Laws of 1913, a school board of one district may allow the children of an adjacent one to attend its school, such board cannot be compelled to do so, and it is no defense to an action which is brought under the provisions of § 1188 of the Compiled Laws of 1913, to compel the furnishing of an additional schoolhouse for the accommodation of children who are more than $2\frac{1}{2}$ miles from the nearest school in a district, that said children live within a distance of $2\frac{1}{2}$ miles of a school which is in an adjacent one.

**Furnishing additional schoolhouse — action to compel — defense — school sites — how selected — number of children — accommodation of.**

3. It is no defense to an action which is brought under the provisions of § 1188 of the Compiled Laws of 1913, to compel the furnishing of an additional schoolhouse for the accommodation of childen who are now more than $2\frac{1}{2}$ miles from the nearest school, that on account of the broken nature of the country no site can be chosen which will be within $2\frac{1}{2}$ miles of the residences of all of the petitioners, provided that a site can be chosen which will be within that distance of the homes of at least nine children of school age, and who are now outside of that limit from any school within the district.

Opinion filed June 1, 1916.

Appeal from the District Court of Ward County, *Leighton,* Judge.

Special proceeding brought under § 1188 of the Compiled Laws of 1913 to compel the directors of a school district to erect a school to accommodate children now distant more than $2\frac{1}{2}$ miles from any school in said district. Judgment for plaintiff. Defendants appeal.

Affirmed.

*Halvor L. Halvorson,* for appellants.

*W. H. Sibbald,* for respondent.

BRUCE, J. This is a special proceeding to compel the directors of school district No. 10 of Ward county to furnish a school to accom-

modate twenty-two children of school age living in sections 5, 6, and 7 in said district, and is brought under the provisions of § 1188 of the Compiled Laws of 1913.

Section 1188 provides that "if a petition signed by the persons charged with the support and having the custody and care of nine or more children of school age, all of whom reside not less than 2½ miles from the nearest school, is presented to the board, asking for the organization of a school for such children, the board shall organize such school and employ a teacher therefor, if a suitable room for such school can be leased or rented at some proper location not more than 2½ miles distant from the residence of any one of such children, and if no suitable room for such school can be leased or rented, the board shall call a meeting of the voters of the district for the selection and purchase or erection of a schoolhouse, as provided for in § 1185. If at such meeting no such site is selected, or if it is not voted to erect or purchase a schoolhouse for such school, the board shall select and purchase a schoolhouse site and erect, purchase, or move thereon a schoolhouse at a cost of not more than $1,200 for such schoolhouse and furniture therefor; Provided, that the provisions of this section shall not apply in instances where schools have been consolidated in accordance with the provisions of § 1190."

It would appear from the record that the petition required by the above section was filed; that an election was held and a vote taken on the question of the removal or erection of a school as provided for in § 1185 of the Compiled Laws of 1913, and that at said election forty-three votes were cast against the erection of a new schoolhouse, and nine votes in favor of it. That thereafter an election was held for the removal of the schoolhouse, and that only eleven votes were cast for its removal. It also appears from the record that after submitting these questions to a vote of the people, the directors of school district No. 10 refused on their own authority and on the authority granted by § 1185 of the Compiled Laws, to choose a site and erect a building, the reason assigned for said refusal being that none of the children of the petitioners lived more than 2½ miles from the schoolhouse now standing and maintained in district No. 10. It also appears that the children of all of the petitioners reside more than 2½ miles distant from the school as now constructed, if the distance is measured along the highways,

and from such highways are taken those along several of the section lines which run through deep ravines, and have not been opened on account of the rugged nature of the country, and are now practically impassable.

The sole and only questions involved are therefore:

1. Whether, in computing the distance a pupil is from a school, one should measure:

(a) In a straight line and as the bird flies;

(b) By the roads which are fit for or have been rendered fit for travel;

(c) Or by the roads which are actually laid out and are fit for travel, and in addition the section lines which, though designated by the statute to be highways, have not been laid out as such, and are not reasonably passable.

2. Whether the statute, in providing for a schoolhouse for pupils who live more than $2\frac{1}{2}$ miles from the nearest school, is limited in its meaning to schools in that particular district, and in that district alone.

On the first question submitted, we are of opinion that the legislature could not have possibly intended that the distance should be measured in a straight line or as the bird flies. As counsel for respondent has suggested, the straight line theory would mean that a community on one side of the Missouri river might be deprived of school facilities merely because a school happened to be located across the stream. This the legislature could never have intended.

Nor can we hold that the building of a schoolhouse in a particular district is not required where a school in another district is accessible. It was evidently the intention of the legislature that the school districts should be sufficient in themselves, and though under the provisions of § 1129 one district may accommodate the children of another, it cannot be compelled to do so. If the adjacent district could not be compelled to accommodate the children of school district No. 10, the fact that some of the children in the district last mentioned lived within reach of the school which was located in the former would hardly justify the directors of the latter in failing to furnish accommodations for their own children, and especially so when, as appears to be the fact in the case at bar, the adjacent district refuses that accommodation.

When we come to the question, however, whether the distance is to

be measured by the roads which are actually in use, or which could actually be traveled, or by those and, in addition, by the section lines which are set apart by the statute as highways, even though the authorities have refused to put any work on them and to lay them out so that they are in their present condition impassable,—we meet with a more serious question. We are, however, of the opinion, and hold, that the measure of distance must be determined by the roads which are actually traveled or at present capable of travel, and that if the school directors desire the criterion of the section line to be used, they or somebody else must exercise the political pressure which is necessary to have them opened.

We are of the opinion, indeed, that the pronounced policy both of our legislature and of the framers of our Constitution is that popular education shall be encouraged, and that, as a state, we have come to the opinion that intelligence is our greatest asset, and that the promulgation of it is a matter which is of the greatest importance. We are satisfied that the policy which is expressed in § 1188 of the Compiled laws of 1913 is that no child shall be deprived of that education and of an equal opportunity to the same, and this, even though the taxpayers of a certain district are unwilling to specifically vote to build or remove a school site. In these particulars, indeed, the interests of the parent state are paramount to those of the locality. Children in short are of more importance than highways, and popular education cannot wait on road building.

The meaning of § 1188 of the Compiled Laws of 1913 is clear. It is that the voters of a district may by popular vote, and if they choose, erect a schoolhouse of any value they desire, and provided they do not exceed the constitutional debt limit; but they cannot on the other hand, by vote or otherwise, refuse the necessary accommodations. If they refuse to authorize the same by vote, the school directors themselves, and on the petition of those charged with the custody and care of nine or more children, may, as guardians of the children and as representatives of the sovereign people of the whole state, furnish the same, though at a limited cost of $1,200.

The principal idea, then, being the furtherance of popular education, and there being no statutory means or authority by which the directors can force the county or township officers to construct roads along the

section lines and against the will of the majority of the voters, we are unable to believe that the legislature intended that education should wait on road building, but rather that it should be paramount thereto.

Nor is there any merit in the contentions of counsel for appellants that the judgment should be reversed on account of the fact that the condition of the roads and highways is such that it is impossible to locate a school which will be within a distance of 2½ miles of all of the petitioners. This question does not seem to have been raised or argued in the court below, and whether it is true or not we are unable to definitely determine from the record which is before us. One thing, however, is certain, and that is that a school can be established which will accommodate more than nine of the children of the petitioners, and who are now outside of the 2-mile limit. This at any rate can be done, and is in itself sufficient to justify the issuance of the writ of mandamus which was prayed for. All that the writ commands is a compliance with the statute, and since the law does not seek to compel impossibilities, this is all that the statute seems to require.

The judgment of the District Court is affirmed.