[File No. 6081.]

SCHOOL DISTRICT NO. 35 OF CASS COUNTY, N. D., a Public Corporation, Respondent, v. MIKE SHINN, Eugene Meehan and Carl Ostwold, Appellants.

(250 N. W. 23.)

Opinion filed August 24, 1933.

*J. E. Hendrickson* and *V. R. Lovell,* for appellants.

*Usher L. Burdick* and *Allen W. Wood,* for respondent.

CHRISTIANSON, J.  This action was brought to recover moneys which it is alleged that the defendants, as directors and treasurer of the plaintiff school district, expended without authority.  The defendant, State Bonding Fund, was also named as defendant as surety on the bond of the defendant treasurer, Ellen Shinn.  The defendant State Bonding Fund demurred to the complaint.  On appeal to this court it was held that the complaint failed to state a cause of action against such defendant.  School Dist. v. Shinn, 61 N. D. 160, 237 N. W. 693.  The case remained pending against the other defendants.  When it came on for trial it was dismissed against the defendant Ellen Shinn on the authority of the decision rendered by this court on the appeal of the State Bonding Fund.  The case proceeded to trial as against the defendants, who were directors of the plaintiff school district at the time the unlawful disbursements are alleged to have been made.

As regards the defendants against whom the action proceeded, the complaint alleged in substance that they were directors of the plaintiff school district during the years 1926 to 1929 inclusive and that contrary to and without authority of law, they allowed and caused to be paid certain sums as tuition for certain children of school age within the plaintiff school district that attended the schools of the city of Fargo; that they expended further sums in the maintenance and operation of a second grade school within the limits of said plaintiff school district without authority of law; that they expended certain moneys of the school district for attorney's fees and expenses in litigation in which the school district was not involved or concerned; and that they unlawfully allowed and expended certain moneys for notary fees and the fees of one of the defendants as arbitrator.  The defendants, in their answer, denied the allegations of the complaint except those admitted.  As regards the specific items of alleged illegal expenditures the defendants alleged that they did make arrangements for the attendance of pupils of the plaintiff school district in the public schools of the city of Fargo, but that such arrangement was made upon petitions made and filed and in accordance with the statute in such cases made

and provided. They admitted that they paid out certain moneys for the operation and maintenance of a school within the limits of the plaintiff school district but alleged that these expenditures were made for the purpose of furnishing school facilities to pupils that could not be accommodated and taken care of in the one schoolhouse then in existence within the district.

Upon the trial both parties adduced evidence, the case was submitted to a jury, and the jury returned a verdict in favor of the plaintiff for $1,631.07. The defendants moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied and they have appealed from the judgment and from the order denying the motion for judgment notwithstanding the verdict or for a new trial.

As indicated, plaintiff's cause of action is predicated upon alleged illegal expenditures of the funds of the school district. The complaint alleges that the expenditures were made in the following amounts and for the following purposes: (1) $1,904.50 expended during the years 1926 to 1929, inclusive, in payment of tuition to another school district; (2) $1,050.40 expended for the operation of a grade school within the plaintiff school district during the year 1928; (3) $551.07 expended for attorney's fees and expenses incident to litigation; and (4) $43.50 expended for the services of a notary public in taking certain affidavits and for the compensation of Mike Shinn as arbitrator. The trial court submitted all four claims to the jury. The jury, as said, returned a verdict for $1,631.07.

In his brief respondent's counsel says:

"It is difficult to say whether the amount found by the jury was tuition paid to the Fargo School District for the Shinn children plus the attorney fee paid to the attorney Hendrickson (Who we surmise it was) or whether it included the other demands in the complaint. In any event, the verdict did not exceed the demands for tuition of the Shinn children and the attorney fee of $500 paid Hendrickson."

In our opinion there is not sufficient evidence to justify a verdict against any of the defendants, except solely for the claim for moneys expended for attorney's fees and expenses incident to litigation, including the moneys expended for the services of a notary public in obtaining certain affidavits.

(1) The plaintiff school district adjoins the city of Fargo. It had a one-room schoolhouse, situated about one and three-quarter miles from the limits of the city of Fargo. This schoolhouse was sufficient to accommodate about thirty children. The district had no high school facilities. The evidence shows that from 1927 on the schoolhouse was rather inadequate for the number of children in the district. The evidence also shows that an arrangement had been made between the Board of Education of the city of Fargo, and the school board of the plaintiff school district, under which certain children residing in the outskirts of the city of Fargo, and nearer to the school of the plaintiff school district, attended that school, and a number of children residing in the plaintiff school district attended the schools in the city of Fargo. This exchange of service was on an equal basis. The plaintiff school district was given credit for the children in the city of Fargo who attended the school in the plaintiff district, and the plaintiff district was charged with the children therein that attended the schools of the city of Fargo.

The laws in existence made it the duty of the plaintiff school district to pay tuition for pupils resident of that district that entered the high schools of the city of Fargo. 1925 Supp. §§ 1438a1–1438a3. The board of the plaintiff school district had unquestioned power to arrange with the board of education of Fargo and to send to the schools of Fargo such pupils as could not be conveniently taught in the plaintiff school district and to pay the board of education of Fargo for their tuition. Comp. Laws 1913, § 1179.

In exercising this latter power the members of a district school board are vested with large discretion. They must determine when it is necessary or desirable to arrange with another school district to furnish school facilities for children from within their district. As said, the evidence in this case shows that throughout all the time complained of, children within the borders of the city of Fargo attended the school operated by the plaintiff school district and that in turn children residing within the plaintiff school district attended school in the city of Fargo. The evidence further discloses that the practice of sending children from the plaintiff school district to school in the city of Fargo continues even under the present board (which apparently instituted this action), for the president thereof testified that there were eight

pupils from the plaintiff school district—four high school and four grade school—attending the schools of Fargo at the time of the trial.

The complaint in this case makes no charge of fraud. The right to recover is predicated solely upon the proposition that the defendants were without authority to expend moneys of the school district for the particular purpose in the circumstances of this case. In an administrative matter like that in question here men and women may, and frequently will, differ as to which is the wiser course. But the very power granted implies the right to exercise it. If it is exercised for the purpose and within the limits prescribed, the individuals charged with the duty to decide do not become liable in damages for errors of judgment.

The moneys expended for tuition for children sent to school in the city of Fargo were expended throughout two or three years. The fact that the children of one of the directors were among those who attended school in the city of Fargo does not invalidate the action of the board. There is nothing to indicate that in this respect he or his children were treated in any other manner than any other resident of the district similarly situated was treated. It is as much the duty of a director of a school district to perform his official duty toward his own children as toward other children in the district. There is nothing in the record here to indicate that there was any improper exercise of such duty, or that the defendants utilized the funds of the district for their personal profit. There is no question but that the funds expended were paid over to and received by the board of education of the city of Fargo.

As said, the acts on which liability is predicated existed for a number of years. The school district, its residents and taxpayers, made no attempt to interfere with the policy that was being pursued. They accepted whatever benefits resulted therefrom. This suit was brought in 1931, long after the moneys were expended and the benefits received by the district and its people.

We are all agreed that the evidence in this case furnishes no basis for a verdict or judgment in favor of the school district and against the defendants for the moneys they expended in payment of tuition for children that attended school in the city of Fargo.

(2) The plaintiff school district adjoins the city of Fargo. Up to

January, 1928, it operated a one-room schoolhouse sufficient to accommodate about thirty childern. The district was crossed by the main line of the Northern Pacific Railroad and U. S. Highway No. 10. The schoolhouse was located on the south side of the railroad and the highway. In that portion lying north of the highway and the railroad a platted addition known as the Golden Ridge addition was laid out. Apparently a number of people established homes in this addition and at the beginning of the school year of 1927 these residents established a private school, secured quarters and employed a teacher. The expenses incident to the establishment and operation of such school were defrayed with moneys raised by subscription. On July 11, 1927, a petition was presented to the school board of the plaintiff school district asking that a school be established by the district to serve the needs of the people and children in this territory. The board declined to grant the petition.

The evidence discloses that about January 1, 1928, when the funds raised by popular subscription for the support of the private school had been exhausted the school board of the plaintiff school assumed responsibility for the maintenance and operation of the temporary school in the so-called Golden Ridge addition. They leased a building in which the school might be conducted for which they agreed to pay, and paid, $20 a month rent; they also employed a qualified teacher. Evidence adduced by the plaintiff discloses that on January 12, 1928, the county superintendent of schools of Cass county informed the officers of the plaintiff school district that she and the county superintendent of Health had inspected the school that was then in operation in the Golden Ridge addition and found that the sanitary requirements had been met to the extent that they were passable; "but that the condition of overcrowding in the schoolroom is bad." She further said to them: "Inasmuch as a teacher holding a proper certificate has been put in charge of the school I am willing to approve, temporarily, the work of such a private school providing the proper tests and examinations are passed by the pupils in attendance."

It is the command of the Constitution that there shall be established and maintained in North Dakota a system of public schools, which shall be open to all children of the state. N. D. Const. § 147.

In carrying out the constitutional mandate for a system of free pub-

lic schools, the legislature has provided for local administrative units, or school districts. The plaintiff is a common school district. The defendants here were members of the school board. The statute says that such "board shall have the general charge, direction and management of the schools of the district." Comp. Laws 1913, § 1173. That "it shall organize, maintain and conveniently locate schools for the education of children, of school age, within the district, and change or discontinue any of them as provided by law." Comp. Laws 1913, § 1174. That "if a petition signed by persons charged with the support and having the custody and care of nine or more children of school age, all of whom reside not less than two and one-half miles from the nearest school, is presented to the board asking for the organization of a school for such children, the board shall organize such school and employ a teacher therefor, if a suitable room for such school can be leased or rented at some proper location not more than two and one-half miles distant from the residence of any one of such children. . . ." Comp. Laws 1913, § 1188.

There is nothing in the record before us on this appeal to indicate that the school in question here did not fall squarely within the latter statutory provision. The minutes of the proceedings of the school board of the plaintiff school district show that a petition for the organization of such school was presented to the board on July 11, 1927. The fact that the school board then declined to grant the petition because they believed an additional school to be unnecessary, did not destroy the petition or the right of the petitioners thereunder. If the facts and the petition then filed brought the matter within § 1188, supra, it was not only within the powers, but it was the duty, of the board to grant the petition notwithstanding the former refusal. Indeed, they could have been compelled to do so by mandamus. State ex rel. Johnson v. Mostad, 34 N. D. 330, 158 N. W. 349. The petition is not before us. There is nothing to show that it was not wholly sufficient. Laying all presumptions on one side, the probabilities are that it was. The desire for a school was so strong that the people established one and defrayed the expense of operating it with their own funds. Some twenty-eight children attended the school. The distance is not shown, but there is testimony to the effect that to transport the children in the so-called Golden Ridge addition to the school in the district would

have required *more* than two miles travel,—how much more the evidence does not disclose.

The presumption is that public officers will discharge their duties honestly and in accordance with the rules of law (State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292), that official duty has been regularly performed and that the law has been obeyed. Walton v. Olson, 40 N. D. 571, 170 N. W. 107.

The plaintiff had the burden of proof. It must prove that the defendants expended the moneys without any authority of law.

In our opinion the plaintiff has failed to show that any of the conditions prescribed by § 1188, supra, as a basis for the organization of a school did not exist. But, even though the school was not organized under § 1188, supra, there is no basis for a recovery here. The record discloses that in February, 1928, a mandamus proceeding was brought by and in behalf of the residents, citizens and taxpayers of the plaintiff school district, to compel the plaintiff school district and its officers to continue to support and maintain the school that was then being maintained and operated in the Golden Ridge addition. In such mandamus proceeding it was alleged that an emergency existed in that the one schoolhouse formerly established furnished school facilities for only about one-half of the school children in the district. The record further discloses that in March, 1928, the teacher of the school in question brought an action against the school district and obtained a judgment for her services as teacher for the months of January and February.

The school in question was operated between January 1, 1928, and June, 1928. The moneys expended for its operation were all expended during that time. The residents and taxpayers in the school district stood by with full knowledge of what was being done. The school district and its people received the benefit of the expenditures made. This action was instituted some two years after the expenditures had been made and the benefits received.

In the circumstances the school district would not be entitled to recover even though the defendants organized a school without complying with the statutory provisions. Kenmare School Dist. v. Cole, 36 N. D. 32, 161 N. W. 542, L.R.A.1917D, 516; Olson v. Coalfield School Dist. 54 N. D. 657, 210 N. W. 180.

The defendants were confronted by a situation requiring action.

The school building was adequate for only about one-half of the children entitled, yes required, to attend school. One of two things must be done:—either lease a building and hire a teacher and conduct a school within the district, or send the children to school in an adjacent district. So far as the evidence discloses the only district that it was practical to consider was Fargo. To send the children to Fargo required three miles transportation.

There is no allegation and no proof that the defendants in maintaining the school in question did not act in the best of faith, and in an earnest effort to discharge their duties. The school district and its people received the benefit of the action taken. Upon the record here it is clear that if the board had adopted the other course, namely, that of sending the children to the schools in the city of Fargo, the financial expenditure to the district would have been greatly in excess of that incurred in the maintenance and operation of the school in the Golden Ridge addition.

We are all agreed that under the undisputed facts here the school district has no cause of action against the defendants for the moneys expended in the operation of the school in the Golden Ridge addition from January 1st to June, 1928.

(3 & 4) As regards the expenditure for attorney's fees, we are of the opinion that the evidence is such as to make it a question of fact whether the expenditures were made in litigation in which the school district was concerned or whether the money was in fact expended to vindicate the rights of one of the defendants in an election contest. A school district as such has no interest in what person is an officer of the district. This is a matter for the electors to determine according to the laws of the state. We are aware of no statutory or implied authority authorizing the school board to expend moneys, either directly or indirectly, in conducting or defending an election contest, or in attacking or defending the right of one of the officers of the district to the title of his office. The evidence in this case, in our opinion, is such that reasonable men in the exercise of reason and judgment may well have found that the moneys expended, both for attorney's fees and for the services of the notary public in taking certain affidavits, were all spent in a matter or in matters in which the school district as such had no concern whatsoever. Hence, we are of the opinion that in so far

as the verdict may be for moneys expended for attorney's fees and expenses incident to litigation, including the services of the notary public who procured the affidavits of persons who attended the election, it is supported by substantial evidence. This is not so, however, as regards the claim for moneys paid to the defendant, Mike Shinn, as arbitrator. The evidence discloses that in the summer of 1928 the school district was divided. The part lying north of the tracks of the Northern Pacific Railway was detached, and apparently formed into a new district, and the plaintiff district retained, and now embraces, the territory lying south of the tracks of the Northern Pacific Railway. Our laws provide that in such case arbitrators shall be appointed to equalize the property, funds on hand and debts of the respective districts affected. Comp. Laws 1913, § 1327. The defendant, Mike Shinn, was named and served as arbitrator for the plaintiff district. There is no claim that he was disqualified or inhibited from serving; the claim seems to be that the annual fee of eight dollars paid to him as member of the school board, also covered his services as arbitrator. This is incorrect. The service as arbitrator was wholly separate and distinct from that as a member of the school board, and the compensation for the latter did not constitute compensation for the services performed as an arbitrator.

Upon the record here it is impossible to tell what items the jury allowed in the verdict. We have no means of knowing whether the jury made any award, or how much, for the moneys expended for attorney's fees, and the services of the notary public. It is possible that the jury found in favor of the defendants as regards these items, and based the verdict wholly upon the claims for moneys alleged to have been illegally expended in payment of tuition to the Board of Education of the city of Fargo, or in the operation and maintenance of the school in 1928. Accordingly, we are in no position to modify the judgment but must remand the case for a new trial.

Reversed and remanded for a new trial.

NUESSLE, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.