Edgar HERMAN and Tony B. Herman, on their own behalf and as residents and taxpayers of Medicine Lodge School District No. 8 of the County of McHenry and State of North Dakota, and on Behalf of Other Residents and Taxpayers Similarly Situated, Plaintiffs and Respondents,

v.

MEDICINE LODGE SCHOOL DISTRICT NO. 8, COUNTY OF McHENRY, State of North Dakota, a Public Corporation, and Cecil Herman, Kyle Miller and Carl Ross Green, Directors of said Medicine Lodge School District No. 8, Betty Fairbrother, Clerk of said School District, and David Fairbrother, Treasurer of said School District, Defendants and Appellants.

No. 7456.

Supreme Court of North Dakota.

June 24, 1955.

Joseph C. McIntee, Towner, Bosard & McCutcheon, Minot, for defendants and appellants.

Heringer & McClintock, Rugby, for plaintiffs and respondents.

SATHRE, Judge.

The plaintiffs, residents, and taxpayers of Medicine Lodge School District in McHenry County, North Dakota brought this action for themselves and other residents and taxpayers similarly situated, against said school district, the directors, clerk and treasurer thereof, defendants, to restrain them from closing the schools in said school district and from transporting the children of compulsory school age to Newport School District in the city of Towner, North Dakota.

Medicine Lodge School District is a common school district consisting of thirty-six sections, and is coextensive with Wager township in McHenry County, North Dakota.

The facts are stipulated and briefly stated are as follows:

In the fall of 1953 there were in the defendant school district 22 children of school age, sixteen of whom were of compulsory school age. The school district did not open any of the schools in the district but instead made arrangements to have all children of school age in the district transported to Newport School District in the City of Towner, some eight or nine miles away where arrangements had been made to receive such children. The defendant district had on hand in the treasury some $8,400 unencumbered and subject to use for operating expenses of the district. The board proceeded to advertise for bids for a bus and a bid of some $4,000 was accepted. The successful bidder agreed to furnish a bus without charge to be used until the new bus could be furnished. The school board also advertised for a bus driver qualified as required by law, and the application of a driver was accepted and it was agreed that his compensation was to be $125 per month.

Thereafter certain school patrons who objected to the arrangements made by the school board brought an action in mandamus to compel the board to open school number 1, in the vicinity of which there were more than the minimum number of children of school age. A writ was granted by one of the District Judges, and school number 1 was opened, a teacher was hired and more than the minimum number of pupils attended said school. However the school board continued the arrangements with Newport School District and continued to transport to said district the remaining ten children of school age.

It is agreed by both parties that the school facilities offered and maintained in Newport School District are superior to those maintained in school number 1, in the defendant school district; that the route traveled by the school bus each way is 14 miles; that there are several schools

open, and operating in adjoining and adjacent school districts, and that no attempt was made by the school board to place any of the pupils in the schools of said adjacent or adjoining school districts.

Under the arrangements made with Newport School District, Medicine Lodge School District agreed to pay tuition for all children attending the Newport Special District School, and also to pay to Newport School District the sum of $70 per year for each pupil in attendance from Medicine Lodge District from the county tuition fund; and Medicine Lodge District further arranged to pay Newport District the sum of $1,200 which Medicine School District was entitled to receive from the State Equalization Fund by reason of having closed one school within the district; and Newport School District agreed to receive in its school all children of school age from said Medicine Lodge School District.

It is also stipulated that all but three of the 22 children of school age in Medicine Lodge School District reside within a radius of from 2 miles to 2½ miles from school number 1, in said Medicine Lodge District.

The plaintiffs allege in their complaint that the action of the defendants in advertising for and purchasing a school bus, advertising for and hiring a bus driver, and in making arrangements with Newport School District to receive the pupils from Medicine Lodge School District was illegal, and without authority of law, and that if the defendants are permitted to continue the said arrangements it will be necessary to increase the taxes of the plaintiffs and other taxpayers within said school district similarly situated. Demand is then made for judgment declaring all of the acts of the defendants illegal and void, and for an order enjoining and restraining the defendants from issuing warrants against the funds of said school district in payment of salaries of a bus driver, and purchase of a bus, tuition or any other expenditure in connection with the arrangements with Newport School District in the matter of receiving the pupils from the defendant school district.

Two of the directors answered denying generally the allegations of the complaint; alleging that they had full legal right and authority to carry out the arrangements made with Newport School District, and that such arrangements would be for the best interest of Medicine School District and the children therein of school age.

The defendant Cecil Herman one of the directors of Medicine Lodge District interposed a separate answer disclaiming any participation in the arrangements made by the other two directors; that he was opposed to the purchase of a school bus, the hiring of a bus driver, and transportation of pupils of Medicine Lodge District to Newport District. He demands judgment for dismissal of the complaint insofar as it applies to him.

The case was tried before the Honorable Albert Lundberg, one of the District Judges of the Second Judicial District, without a jury. Judgment was rendered in favor of the plaintiffs perpetually enjoining the defendants from carrying out any of the arrangements made for transferring the pupils from Medicine Lodge School District to Newport Special District. The defendants appealed to this court and demanded a trial de novo.

The question presented on this appeal is whether the defendant, a common school district, had the authority under the law, to purchase a school bus, hire a bus driver, furnish vehicular transportations for its pupils to Newport Special School District which is willing to receive such pupils, pay tuition, transfer and assign to the receiving district certain funds to which the defendant district is entitled from the county tuition fund by reason of having one school closed.

The first question for consideration is whether under the existing situation Medicine Lodge School District may lawfully close its schools and make arrangements to transport its pupils to another district and pay tuition and other expenses incident thereto.

The appellants contend that the school district is authorized by Section 15–2512,

NDRC 1943 to make arrangements to send children of school age to other districts, provide transportation and pay tuition to the receiving district. Said section reads as follows:

"When, on account of shorter distances and other conveniences, it is to the best interests of a school district to send pupils into another school district, the district sending such pupils, with the approval of the county superintendent of schools, may pay the tuition of such pupils to the district to which they are sent. The board may arrange, and when petitioned to do so by a majority of electors of the district shall arrange, with the school boards of other districts to send to such other districts pupils who can be taught conveniently therein, and for the payment of their tuition and for furnishing and paying for their transportation to and from the schools in such other districts."

The appellants stress the following language of the statute:

"When, on account of shorter distances and other conveniences, it is to the best interests of a school district to send pupils into another school district, the district sending such pupils, with the approval of the county superintendent of schools, may pay the tuition of such pupils to the district to which they are sent. * * *"

They assert that the phrase: "to the best interests of the district" has reference to the best educational facilities and opportunities for the children rather than to the financial interests of the school district as a public corporation. They further contend that under said statute the school board may make the necessary arrangements for sending children to another school district when in its judgment it is for the best interests of the district; and that when such arrangements are made the board is authorized to pay tuition for the children sent to another school district and to furnish and pay for their transportation to and from the school to which they are sent.

The respondents contend that the defendant school district is prohibited by said section 15-2512 from carrying out the arrangements with Newport School District to receive its pupils. They argue that at least two of the three following conditions must exist in order to authorize the school board to make such arrangements.

(a) The school to which the children are sent must be a shorter distance from the home of the pupils than a school in their home district which is open; or

(b) There must be some other convenience bearing some relation to the matter of travel; and

(c) It must be for the best interests of the district.

It is contended that the third condition is constant and must combine with at least one of the other two conditions before the board would have the right to send children of compulsory school age to another district under the statute quoted. They assert that the rule of ejusdem generis applies here and that the phrase "other conveniences" must bear some relation to shorter distances of travel, and does not include any advantage or convenience other than shorter distances of travel to and from school.

Under Section 15-3404, 1953 Supp. ND RC 1943, the school board may not furnish transportation except to families residing more than two miles from a school. Under the arrangements made by the defendant school district a bus will be furnished which complies with all specifications for safety and comfort prescribed by statute. The defendants contend that it would be less hardship for children of tender years to ride fourteen miles in a comfortable bus morning and evening than to walk two miles twice each day during the winter months. Even if the rule ejusdem generis is applicable to the situation, which we think is doubtful, the arrangements made by the board for bus transportation is a convenience which bears some relation to travel distances.

It is also contended by the respondents that the phrase "the best interests of a

school district" has reference to the school district as a public corporation and has no reference to any educational benefits to the pupils; that the superior quality of instruction afforded by the Newport Special School District does not come within "other conveniences" and that the "child benefit" rule does not and cannot apply under section 15–2512. They claim that the school board may send pupils to other districts only when it is in the interest of the district as a public corporation regardless of benefit to the children. It is admitted by the plaintiffs that the "child benefit" rule prevails in many states but they assert that this rule cannot apply under the laws of this state.

■ The respondents seem to overlook the purpose for which a school district is organized. Under the provisions of our state constitution and laws enacted under its mandate, school districts are organized for the purpose of providing adequate educational facilities and opportunities for all children of school age.

An examination of recent legislative enactments in this state relative to educational facilities shows a positive trend towards the "child benefit" rule, and that the legislature is aware of the inadequacy of the one-room school where, in many cases, there are twenty or more pupils with one teacher attempting in crowded conditions and under other disadvantages to give instructions in all primary grades. The legislative assembly of 1947 enacted the school redistricting law, NDRC 1953 Supp. 15–5301 et seq., which provides for reorganization of school districts, so as to include more territory, provide for transportation of pupils and other advantages for the school children of the state. The title and purpose of that statute is as follows:

"It shall have for its purpose the formation of new school districts and the alteration of the boundaries of established school districts *in order to provide a more nearly equalized educational opportunity for pupils of the common schools,* a higher degree of

uniformity of school tax rate among districts, and a wiser use of public funds expended for the support of common school system[s]." (Emphasis supplied.)

Other factors to be considered under said law are:

Conditions affecting the welfare of the teachers and pupils; equalization of the educational opportunities, and other matters which are of importance in promoting better educational opportunities for the children of the state.

The 1947 legislative assembly also enacted a statute providing for a non-profit school lunch program, Chapter 15–54, 1953 Supp.NDRC 1943. It provides that:

"'School lunch program' means a program under which lunches are served by any school in the state on a nonprofit basis to children in attendance, including any such program under which a school receives assistance out of funds appropriated by the Congress of the United States * * *.

"The state educational agency shall establish a fund known as the North Dakota School Lunch Fund. All moneys received by the state educational agency, from the federal government or any other source, for the North Dakota school lunch program, shall be placed in such a fund. * * *

"'State educational agency' shall mean the state department of public instruction."

■ These enactments certainly indicate a legislative intent to provide better school facilities and educational opportunities for rural school children of the state.

Respondents contend also that a school district can furnish transportation only to schools in the district, and they cite section 15–3412, NDRC 1943 which provides:

"The school board or board of education of any school district which furnishes vehicular transportation to any of its schools, prior to the opening

of school each year, shall enter into written contracts for the furnishing of such transportation, for the ensuing school year."

We cannot agree that said section limits the board to furnishing transportation to schools within its district only. To so hold would indeed be a strained construction of the language of the statute. It provides that where the district furnishes transportation to any of its schools it shall enter into a contract for furnishing such transportation prior to the opening of the school each year. The statute does not prohibit the board from furnishing transportation in cases where the district has made arrangements to send its pupils to another district. Section 15-2512 under which the defendant district made arrangements to send its children to Newport Special School District specifically authorizes the board to "send pupils into another school district, * * * [and] arrange * * * for the payment of their tuition and * * * transportation."

Under Section 15-2512 quoted herein, the school board, with the approval of the county superintendent of schools, is authorized to determine the conditions under which children of school age may be sent to another district. It is admitted that the county superintendent approved the action of the board. Under the statute, when such arrangements are made, the board is authorized to pay tuition and furnish and pay for transportation to and from the school district to which its pupils are sent.

Section 15-3418 NDRC 1943, 1953 Supp. authorizes school boards to purchase school bus equipment. It provides as follows:

"School boards shall have the power to purchase a bus body, a chassis, or a complete motor bus. Such bus body, chassis, or complete motor bus shall meet the standards set up by the superintendent of public instruction and the highway commissioner. School boards shall be required to advertise for bids in accordance with the provisions of section 15-4715, of the North Dakota Revised Code of 1943. School boards may use money in the general fund to purchase a bus body, a chassis, or a complete motor bus on the installment plan, provided that the payment of such plan shall not extend over a period greater than four years, and that the interest on the unpaid balances shall not exceed four per cent. Such interest shall be straight interest on unpaid balances."

Section 15-3419, 1953 Supp. NDRC 1943, authorizes the board to employ a driver:

"The driver of a school bus shall be in good physical and mental health, able-bodied, free from communicable diseases, and shall have normal use of both hands, both feet, both eyes, both ears. It shall be the duty of school boards to designate reputable physicians to examine each driver annually. It shall be the duty of each driver to present the physician's certificate of physical fitness to the employing school board before a contract is signed. Such driver shall possess a good moral character, and shall be at least eighteen and not more than sixty years of age and shall be required to have a North Dakota driver's license. The term school bus as used in this Act (section) shall mean a passenger motor vehicle having an actual seating capacity of twelve or more passengers."

The language of the statutes quoted is positive in form, and when the board in the exercise of legal discretion has found that proper conditions exist it may exercise the powers specifically granted.

As a general rule courts will not interfere with the discretion of school boards in the performance of their duties except to prevent an abuse of it. McQuillin, Munic. Corp., 3d Edition, Public Education, Vol. 16, Section 46.07, page 580, states the rule thus:

"These boards are usually given extensive discretionary powers in order that they may the better assist in carry-

ing out the general school system adopted by the state and thus promote the cause of public free education. They are generally empowered to make rules and regulations, subject, of course, to the laws of the state, for the government of the schools under their control; it being intended that they should exercise their best judgment for the highest good of the schools. The courts will not interfere with the exercise of this discretion except to prevent an abuse of it. Thus it logically follows, the rule usually prevails that the action of a board of education taken in the reasonable exercise of its discretion in honesty and good faith and without fraud or sinister motive is not subject to judicial review."

And in Vol. 78 C.J.S., Schools and School Districts, § 99, p. 849, it is stated:

"In the establishment, management, or the administration and supervision of schools, or in the exercise of the powers conferred on county boards of education, and similar boards, by statute, they are vested with a broad discretion, with the exercise of which the courts will not ordinarily interfere except in the case of clear, gross, or palpable abuse of discretion, clear violation of law, fraud, bad faith, or the transcending of the board's legal authority. Such a board must not act arbitrarily or unreasonably, and an exercise of honest judgment, although erroneous, is not an abuse of such discretion, and is not subject to review.

"There is no requirement that a board follow its past policy in matters within its discretion."

The school laws of Kentucky provide that:

"The county board of education may at any time authorize and provide for the transfer of any child, children or grades in any subdistrict to the public school of another subdistrict if it is nearer or otherwise desirable." Ky.St. § 4426–1.

This statute was under consideration by the court of appeals of Kentucky in the case of Brown v. Bailey, 238 Ky. 287, 37 S.W.2d 58. In disposing of the issues the court said:

"It will be observed that under the foregoing section the county board of education may at any time authorize and provide for the transfer of any child, children, or grades in any subdistrict to the public school of another subdistrict if it is nearer or otherwise desirable. The point is made that the transfer can be ordered only when desirable, and that means desirable not to the teacher or the board of education, but desirable to the parents and children. In our opinion the word 'desirable' is not used in the sense of personal preference either on the part of the parents or the children, or the board of education, or the teacher. What is meant is desirable in the sense of being for the best interests of the school and the pupils, and whether or not a transfer is desirable from that standpoint is a matter to be determined by the board and not by the parents or children, who might never consent to the change, although not to do so would seriously impair the educational advantages of all concerned."

In the case of Donie Ind. School District v. Freestone Consolidated Common School District, Tex.Civ.App., 127 S.W.2d 205, 206, a statute making provision for the transportation of pupils to and from any school upon which they might be in attendance was under consideration by the Texas Civil Court of Appeals. In the opinion it is stated:

"We think the issue involved herein is clearly shown to be one arising in the administration of the school affairs of said county. The general management and control of such affairs is vested in the county school trustees of each county. R.S. Art. 2676, Vernon's Ann.Civ.St. art. 2676. Necessarily, under the general language used in said article, the county school trustees

of each county are vested with a large discretion in the exercise of the powers so conferred, and the courts will not ordinarily interfere with their exercise of the same unless it is clearly shown that such discretion has been abused."

In the case of School District No. 35 of Cass County v. Shinn, 64 N.D. 20, 250 N.W. 23, 24, this court had under consideration section 1179, C.L.1913, which contained provisions similar to section 15–2512 relative to sending pupils from one district to another district. In that case we said:

"The board of the plaintiff school district had unquestioned power to arrange with the board of education of Fargo and to send to the schools of Fargo such pupils as could not be conveniently taught in the plaintiff school district and to pay the board of education of Fargo for their tuition. * * *

"In exercising this latter power, the members of a district school board are vested with large discretion. They must determine when it is necessary or desirable to arrange with another school district to furnish school facilities for children from within their district."

Respondents cite McWithy v. Heart River School District, 75 N.D. 744, 32 N.W.2d 886; Seiler v. Gelbar, 54 N.D. 245, 209 N.W. 376; and State ex rel. Brand v. Mostad, 28 N.D. 244, 148 N.W. 831, as supporting their position herein. We have examined these cases and find that the facts therein are materially different from the facts in the instant case. In State ex rel. Brand v. Mostad it was held that school boards have the right to exercise all reasonable discretion in furnishing the free transportation provided by law. In Seiler v. Gelbar it was held that in the discretion of the school board transportation may be furnished either by the use of public conveyances or by allowing to each family as compensation a sum of money dependent upon the distance to be traveled and the number in the family. McWithy v. Heart

River School Dist. was an action brought by the teacher for salary claimed to have been unlawfully withheld by the school board and has no application to the facts in the case at bar.

Respondents concede that the trial court erred in holding that the defendant district had no authority to purchase the bus. We quote from page 30 of their brief:

"Secs. 15–3418 and 15–3419 when read as a part of Chap. 15–34, of which they are clearly a part, undoubtedly conferred on boards of directors of common school districts the discretionary power of providing vehicular transportation within the district, including authority to purchase a school bus and to employ a driver to operate it. To the extent that the judgment in this case permanently enjoins the purchase of the bus, we have reached the conclusion on further consideration of this matter that the judgment enjoining the purchase of the bus should be modified to permit its purchase and authority to pay for it."

The right of the school board to purchase a bus is therefore not an issue in the case.

There remains for determination only the one question as to whether the appellant school district had the power under section 15–2512 to make arrangements to send its children of compulsory school age to Newport Special School District. There is no doubt that Newport District had the power to receive defendants' pupils,—in fact, that is not an issue here.

We think that it is fully established by the record, the applicable statutes and the authorities cited that the defendant school district had the authority to make arrangements to send the pupils in the district to Newport Special School District, pay tuition, provide for transportation by purchasing a bus and employing a driver. It seems clear that the arrangements made are to the best interest of the pupils of the district since they are provided educational opportunities far superior to those afforded in the defendant district.

There are sufficient moneys in the general fund of the district, unencumbered, which may legally be drawn upon for defraying the expenditures incident to carrying out the arrangements made with Newport Special School District. Accordingly we conclude that the judgment of the district court should be reversed and the case remanded with directions to enter judgment in accordance with this opinion.

It is so ordered.

BURKE, C. J., and MORRIS, JOHNSON and GRIMSON, JJ., concur.