JONAS OLSON, Perry Smithberg, Lars Dalager, and Oscar Morseth, Appellants, v. COALFIELD SCHOOL DISTRICT NO. 16 OF DIVIDE COUNTY, NORTH DAKOTA, and A. H. Anderson, Oscar Lindstrom, and C. O. Larson as Board of Directors of Said School District; Brown School District No. 40 of Divide County, North Dakota, and E. A. Shirley, F. P. Kimball, and Henry Nordman, as Board of Directors of Said School District; the Board of Education of the Village of Kermit, of the State of North Dakota, and Grant Case, Oscar Anderson, Augie Devries, G. F. Loucks, and O. Lien as the Board of Education of Said Last-named School District, and E. A. Shirley, F. P. Kimball, Henry Nordman, and Mrs. John Stiner, as the Board of Election of said Brown School District No. 40 of Divide County, North Dakota, Respondents.

(208 N. W. 154.)

**Schools and school districts — district high schools — qualification of districts that may join — kind of districts that may join.**

Sections 1192 and 1194, Comp. Laws 1913, relating to the establishment and the maintenance of district high schools construed, and *held:*

(a) That where two or more school districts join for the purpose of establishing and maintaining a district high school, no one of such districts so joining need possess the qualifications imposed by the statute as to school population and number of schools contained therein; that it is sufficient if all of such districts taken together possess such qualifications.

(b) That the provisions of said §§ 1192 and 1194 apply only to common school districts and are not applicable to special school districts.

Opinion filed October 30, 1925. On rehearing January 29, 1926.

School and School Districts, 35 Cyc. p. 849 n. 90.

Appeal from the District Court of Divide County, *Moellring,* J. Reversed and remanded.

*F. J. Funke,* for appellants.

*Sinkler & Brekke,* for respondents.

NUESSLE, J. The relators, Olson, Smithberg, Dalager, and Morseth, began this proceeding in certiorari to challenge the establishment of a joint district high school pursuant to the provisions of §§ 1192–1194, Comp. Laws 1913. After hearing had, the district court ordered judgment in favor of the defendants. From the judgment entered in accordance with the terms of this order the relators perfected the instant appeal.

There is no controversy as to the essential and controlling matters of fact in the case. The relators, Olson and Smithberg, are electors and taxpayers residing in Brown school district No. 40, and relators, Dalager and Morseth, electors and taxpayers residing in Kermit special school district, in Divide county, North Dakota. Brown school district comprises all of congressional township 162, range 95, excepting parts of sections 3, 4, 9, and 10 of that township which is organized as Coalfield school district No. 16. Both Brown school district and Coalfield school district are common school districts. Kermit special school district comprises the territory included in congressional township 163, range 95, and fractional congressional township 164, range 95. The three districts are contiguous. The village of Noonan is located in Coalfield school district. The village of Kermit is in Kermit school district. The two villages are about two miles apart. Prior to June, 1924, Brown school district had a school population of more than sixty and maintained four schools. Kermit school district maintained four schools and more than sixty children of school age resided therein. Coalfield school district maintained one school building containing five separate rooms with a teacher in each room, and more than one hundred

children of school age resided in the district. The defendants, Shirley, Kimball, Nordman and Stiner are the election board of Brown school district, and the other individual defendants are members of the board of education and the directors of the several defendant school districts wherein they respectively reside. On June 7th, 1924, a special election was called in each of the three districts for the purpose of voting upon the question of establishing with the others a joint district high school. The statutes, pursuant to which this election was called, and which must control in the determination of this appeal, are § 1192, Comp. Laws 1913, which provides:

"In any district containing four or more schools, and having an enumeration of sixty or more persons of school age residing therein the board may call, and if petitioned so to do by ten or more voters in the district, shall call a meeting of the voters of such district, in the manner prescribed in section 1185 to determine the question of establishing a district high school. If a majority of the voters at such meeting vote in favor of establishing such high school, the meeting shall further proceed to select a site therefor, and to provide for the erection or purchase of a school building or for the necessary addition to some school building therefor. Thereupon the board shall erect or purchase a building or make such addition for such high school, as shall be determined at such meeting and shall establish therein a district high school containing one or more departments, and employ teachers therefor."

and § 1194, Comp. Laws 1913, providing that:

"Two or more adjacent school districts may join in the establishment and maintenance of such high school, or for a graded school or for both, when empowered so to do by a majority of the voters in each district, at a meeting called and held as provided for in this section (1192), in which case the building and furniture occupied and used for such high school or graded school shall belong to the districts so uniting and all the costs of maintaining such school or schools, including the wages of teachers and all necessary supplies shall be paid by such districts in proportion to the assessed valuation of the property in each; and the employment of teachers therefor, and the management, control and grading thereof shall be vested in the joint boards of

53 N. Dak.—37.

such districts, subject to the approval of the county superintendent of the county in which such districts are located."

At the election so held on June 7th, a substantial majority of the voters in each of the school districts voted in favor of establishing the proposed joint district high school. Thereafter, the boards of the respective districts proceeded to take the further necessary steps to establish such high school. Whereupon the relators, challenging the propriety and regularity of the action thus taken, sought to review the same by this proceeding in certiorari. As grounds for challenge, the relators advance two propositions: First, that Coalfield school district has but one school and therefore is not qualified to establish a district high school either separately or in common with other school districts and, second, that the provisions of the statutes heretofore quoted are not applicable to Kermit school district for the reason that that district is a special school district, while the statute contemplates that a district high school may be established only in common school districts.

It is conceded that there were, at the time of the election, more than one hundred persons of school age residing within Coalfield school district, so that the prerequisite of the statute in that respect is unquestioned. But the relators contend that there was but one school in the district, whereas, the statute requires that there be four. There is no dispute but that Coalfield school district while it maintained but one school building, had within that building five rooms, each in charge of a different teacher, and each devoted to one or more grades not taught in any of the other rooms. So relators insist that there was but one school in the district; that the statute contemplates four, and, therefore, Coalfield school district was not eligible, either to establish a high school of its own, or to enter into any joint enterprise with an adjacent district to establish such a high school. We are of the opinion that it is immaterial whether the Coalfield school be considered as one school, or as five. Consideration of the statutes makes it apparent that the legislature intended to provide a means whereby single common school districts having the required number of persons of school age and the required number of schools, might establish high schools. The requirements as to the number of persons of school age and the number of established schools were imposed as matters of precaution against

improvidence and expense. But in order that the need for such schools might be met, the legislature also contemplated that where a single district could not comply with such requirements, or for any other reason desired to do so, it might join with an adjacent district or districts in establishing a high school, and in such case no single district need have the full statutory requirements, provided that all of the districts taken together possessed them. Sections 1192–1194 were enacted as one section (Sess. Laws 1890, § 86, chap. 62), and when thus read together it seems too plain for argument that such was the legislative intent. There is, therefore, no basis for the first of the two propositions advanced by the relators.

There remains then the single question as to whether the application of the statutory provisions heretofore quoted is restricted to common school districts. Careful study of chapter 12 of the Political Code, Comp. Laws 1913, and its origin and history impels an affirmative answer. Chapter 62, Sess. Laws 1890 was comprehensive in its scope. It is the ancestral statute from which practically all of the school laws now in effect touching the public school system have descended without substantial change or modification. The greater part of the act dealt with school matters generally and with the organization and establishment of common school districts. Article 19 (now article 9 of chapter 12 of the Political Code, Comp. Laws 1913), however, related to special school districts. Thus it appears that the legislature in 1890 when it enacted chapter 62, plainly intended to make provision for two sorts of school districts, to wit: common school districts and special school districts. That distinction has been continued throughout all subsequent legislation. It contemplated that special school districts might be organized whenever the proposed districts included a city or incorporated town or village. The first section of article 19 of chapter 62, Sess. Laws 1890, now in force as § 1229, Comp. Laws 1913, provides that all cities, towns, and villages having boards of education shall be governed by the provisions of the article. And this court has held that when a special school district is organized it is governed by the article relating to such districts, in so far, at least, as that article deals with subject matter affecting the special district. Sorenson v. Tobiason, 48 N. D. 924, 188 N. W. 41. See also State ex rel. Nicholson v. Ferguson, 23 N. D. 153, 134 N. W. 872; Rosatti v. School Dist.

52 N. D. 931, 204 N. W. 833. Under the terms of both the original and the present statutes, and consistent with the apparent distinction between common school districts and special school districts, different provisions were, and are, made for the organization, establishment, financing, and government of common and special school districts. Common school districts are administered by boards of directors consisting of three members. Special school districts are administered by boards of education consisting of five members. The article governing special districts specifically defines the powers of boards of education, and among other things, provides that such boards shall have power, and it shall be their duty, "to establish and maintain a high school whenever in their opinion the educational interests of the corporation demand the same, in which such course of study shall be pursued as shall be prescribed or approved by the state superintendent, together with such additional courses as said board of education may thereafter deem advisable to establish." Obviously, the statute contemplates that boards of education of special school districts shall have the power, and imposes upon them the duty, to establish high schools without a vote of the electors of such districts. On the other hand, the statute, §§ 1192 and 1194, supra (Sess. Laws 1890, § 86, chap. 62), contemplates that high schools may be established in common school districts when, and after, the electors of such district or districts have voted upon and in favor of the proposition. That is, the act provides for the establishment of high schools in special districts in one manner and in common school districts in quite another manner, and having provided these several manners in which high schools may be thus established, the reasonable conclusion is, that each is intended to be exclusive of the other. See also Sorenson v. Tobiason, supra. The defendants insist that by reason of the words "In any district" as used in the first sentence of § 1192, supra, there can be no question but that it was contemplated that the statute should apply to "all districts." But in the light of the various other statutory provisions, and their origin and history, we think that these words must be read to mean, "in any common school district." In this regard, the provision for the government of joint district high schools as contained in § 1194 supra, is significant, for it is therein provided that the management, control, and grading thereof, shall be vested in the joint boards of the districts entering into the

compact. Yet, as heretofore indicated, the statute, § 1245, Comp. Laws 1913, provides that special school districts shall be governed by boards of education consisting of five members, while the boards of common school districts are made up of three members. See § 1151, Comp. Laws 1913. Thus there would be inequality in the joint board from the the start were the provisions of §§ 1192 and 1194 to be applied to special school districts. Considering the whole statute it is impossible to avoid the conclusion that §§ 1192 et seq., applying only to common school districts, and that, therefore, the several boards of Kermit special school district, Brown school district and Coalfield school district were without jurisdiction to order elections for the purpose of having the electors of their several districts vote upon the proposition of establishing the proposed joint high school, and that any proceedings had by reason of such elections are without the statute and void.

The defendants contend, however, that in any event both Coalfield school district and Brown school district are within the purview of the statute; that both of these districts voted by large majorities for the establishment of a joint high school, and therefore, in so far as they are concerned the elections are valid and effective, and a high school for those two districts may be established by virtue thereof. We think, however, that this contention cannot be sustained. The proposition as submitted to the voters was whether a joint high school should be established by the three districts. To establish one for the two districts would be a wholly different matter. Whether the electors of the two districts would favor such a proposition is purely conjectural and can be determined only by submitting the proposition to them at elections called for that purpose.

For the reason above set out the judgment of the District Court must be reversed and the cause remanded with directions to enter judgment in accordance with the prayer of the relators' petition. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and BIRDZELL, JJ., concur.

NUESSLE, J. (on rehearing). After the foregoing opinion was filed, the respondents petitioned this court for a rehearing and for a remand

of. the cause to the district court for the taking of further testimony. Petitioners do not challenge the legal conclusion reached in the original opinion, but base their application wholly upon the proposition that the circumstances in fact are such that to grant the relief as prayed for in the appellants' complaint will work manifest injustice.  They contend that in fact the plaintiffs and appellants are estopped by acquiescence from taking exception to the regularity of the proceedings had with reference to the establishment and erection of the joint district high school; that the proceedings attacked were had in June 1924; that plaintiffs and appellants then knew and at all times since have known just what was done and what was contemplated; that, notwithstanding, plaintiffs permitted the various school districts to proceed to establish the joint district high school to incur indebtedness, to levy taxes, to employ teachers, to proceed with the moving and erection of buildings, and to enter into other undertakings in connection with the project, and made no attempt to voice their objections until February, 1925, after all of these things had been done; that to grant the relief prayed for by the plaintiffs will work injustice to the various participating districts and their inhabitants.  On the other hand, the plaintiffs insist that estoppel, or the facts upon which an estoppel might be founded, were not pleaded; that the only questions raised and considered in the district court where the two questions of law which were disposed of in the original opinion; that those were the only questions raised and argued in this court on appeal, and that therefore this court cannot now properly remand the case for the taking of further testimony.

It seems to us that in view of the pleadings in the case and the issues as made thereby and considered and determined by the trial court, that it is not now possible to remand the cause for the taking of further testimony.  We do think, however, that the judgment to be finally entered herein should be without prejudice to the right of the defendants to have litigated and determined on its merits in an appropriate proceeding the question of estoppel now sought to be raised.  See State ex rel. Walker v. McLean County, 11 N. D. 356, 92 N. W. 385, and cases cited; Greenfield School Dist. v. Hannaford Special School Dist. 20 N. D. 393, 127 N. W. 499, and authorities cited.

Accordingly, the judgment appealed from will be reversed and the cause remanded with directions to the district court to enter judgment

adjudging the proceedings complained of to be void, but denying the plaintiffs any other affirmative relief.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.