This is an action brought to restrain and enjoin the Coalfield School District No. 16, Brown School District No. 40, the officers of said school districts, and the board of education of the village of Kermit in Divide county, from in any manner proceeding to further *Page 659 
organize, operate, or continue a high school known as the Noonan District High School in Divide county, North Dakota.
In February 1925, Jonas Olson, Perry Smithberg, Lars Dalager, and Oscar Morseth started a special proceeding to determine the validity of the organization of said high school. That action finally reached this court; Olson v. Coalfield School Dist.53 N.D. 575, 208 N.W. 154. In that case, this court held, that the legislature had provided two methods for the organization of high schools, one for the organization of a high school in a special district, and one for the organization of a high school in a common school district, and that each is intended to be exclusive of the other, that is, a high school in a common school district can only be organized under the law prescribed by the legislature for such organization, and likewise the organization of a high school in special district can only be organized under the law provided for that purpose.
In the organization of the high school the three districts acted under the law for the organization of a high school in common school districts, and if all three of the school districts interested had been common school districts, the organization would have been regular and legal. However, in the organization they included one special school district and therefore the organization was irregular and illegal.
The defendants petitioned for a rehearing and alleged: "The organization of said district high school was consummated on the 7th day of June 1924, and ever since said district high school has been in operation. That after the election organizing the said district high school no contest of the said election was instituted and no proceedings were had to declare the said organization of said district high school, illegal until February 7th, 1925, and that the plaintiffs in this action stood by and without objection permitted the organization to go forward and allowed and permitted without objection the expenditure of large sums of money, the levying of taxes, the hiring of teachers, the actual conduct of the high school for several months, the creation of indebtedness, the contribution of money by private citizens to aid in the construction of the high school building and the expenditure of such money contributed in such construction, and many other things sufficient to create an estoppel against the plaintiffs."
They then quoted figures amounting in all to $9,793.24, as money *Page 660 
invested or debts incurred in the organization of said high school, all of which was supported by the affidavit of the clerk of the district high school board.
In finding six, the trial court in the original proceeding found as a fact, that an election was held in each of the three school districts on the 7th day of June 1924, at which a majority in each district voted that the building owned by the Kermit school district be purchased for the sum of $5,000, and erected on the site selected for the high school in the Coalfield district. In the answer there were the following allegations: "That in each of said districts at said elections, it was decided and determined to establish the site of the said district high school for the said three districts, all of which districts are adjacent, in the town of Noonan in Coalfield school district, and that a site was then and there selected for such district high school by each of said districts which site was located at Coalfield school district and it was further decided and determined that, at each of the said school district elections hereinbefore mentioned held on said 7th day of June, 1924, that the building owned by the Kermit school district should be purchased from said Kermit school district for the sum of $5,000, and that same should be erected on the site selected in the Coalfield school district. That after the said election was held and in reliance on said election a basement was dug at the site of the said location selected for said district high school in said Coalfield school district and a foundation constructed and erected for the purpose of erecting the said purchased school house thereon."
On page four of defendant's brief in the original proceedings there is the following argument: "After these districts had so organized a district high school, Coalfield expended large sums of money constructing a basement and erecting the foundation for the purpose of moving the Kermit four-room school building to Noonan and to carry out the will of the people of those districts as expressed in those elections. Not only that, but the said districts voted and issued bonds for the purpose of going on with this educational work, except Brown school district. These districts have expended large sums of money in an effort to get this district high school in operation. Brown school district attempted to issue bonds some time ago for the purpose of constructing, erecting and maintaining under this organization their proportionate *Page 661 
share of the project. They were enjoined and rightly so, because the election was called without having a petition signed and filed as provided by § 1185 of the Compiled Laws. Then an election was called for the 9th day of February, and this action was commenced which prevented the holding of such election."
The trial court found as facts the allegations in the answer to be true, which considered with the argument in the plaintiff's brief, indicates that the defendants relied upon the question of estoppel. In considering the case on rehearing, this court concluded that the question of estoppel could not be determined appropriately in the proceeding before it. With all of this in view, on rehearing this court said: "It seems to us in view of the pleadings in the case and the issues as made thereby and considered and determined by the trial court, that it is not now possible to remand the cause for the taking of further testimony. We do think, however, that the judgment to be finally entered herein should be without prejudice to the right of the defendants to have litigated and determined on its merits in an appropriate proceeding the question of estoppel now sought to be raised. . . . Accordingly, the judgment appealed from will be reversed and the cause remanded with directions to the district court to enter judgment adjudging the proceedings complained of to be void, but denying the plaintiffs any other affirmative relief."
Judgment was duly entered in accordance with the above orders; plaintiffs brought this action, and defendants answer, pleading estoppel fully and at length. At the conclusion of the trial the court found the facts and conclusions of law in favor of the plaintiffs, ordered judgment thereon, from which judgment the defendants appeal to this court. There are two questions involved: 1st; the effect of the decision of this court in the former action, and 2nd; Are the plaintiffs estopped? We will consider them in the order named. The term "without prejudice" means that no right or remedy of the parties is affected, the use of the phrase simply shows that there has been no decision of the case upon the merits, and prevents the defendant from setting up the defense of res adjudicata, 40 Cyc. 2130, note and cases cited, 4 Words Phrases, 133. When this court said that the judgment to be entered should be without prejudice to the right of defendant to have litigated, and determined on its merits in an appropriate proceeding the question of *Page 662 
estoppel, it meant that that right was preserved to the defendants, and that they were in no way to be prejudiced by the judgment in defending on the ground of estoppel. The trial court erred in holding that the judgment was a bar to any further litigation on the question of estoppel.
The plaintiff offered no testimony, and the defendants allege in their answer, that the high school has been maintained from October 1, 1924, until date of said answer, and that during that time they have expended the sum of $44,333.24. The trial court, however, restricted the testimony of expenses to expenses incurred prior to February 25, 1925, the date upon which the former action was commenced. It appears in the testimony that prior to the 25th day of February 1925, the high school had incurred an indebtedness of $5,208.50. Of this amount there was actually paid $2,635.25, and certificates of indebtedness were authorized in the sum of $2,000 and one certificate for $1,000 was issued. On June 18, 1924, the high school board voted to call an election on July 8, 1924, to bond the high school district in the sum of $12,500, and on July 18, 1924, the board voted to accept an offer for the sale of bonds. Taxes were levied in each of the school districts for the years 1924 and 1925. The Brown school district levied $1,735, Coalfield school district $1,500 and Kermit and Mentor townships $1,965. In June 1925 the school district at an election voted to purchase the school building at Kermit for $5,000, which said school building was to be moved upon the basement built on the site selected for the high school at Noonan. The basement of the Methodist Church was rented at $40 a month and the high school was organized and opened there October 1, 1924, teachers employed for the school year, and in which school, were taught the ninth, tenth, eleventh, and twelth grades, as taught and conducted in a high school.
There is no question about the good faith of the school districts in their attempt to establish a legal high school. The evidence shows that they acted at different times under the instructions of the state's attorney of Divide county. Before any action was taken by said school districts, meetings were held in the different districts at which the subject of the building of a high school was discussed, and it was a matter of common knowledge among people in said districts, but no question was raised until the former action was commenced, about nine months after the organization of said high school. Some of the plaintiffs in the *Page 663 
original action had signed petitions for the organization of said high school; the same is true of quite a few of the plaintiffs in the case at bar, and some of them were also directors in the different school districts; and were defendants in the former case, some of them had children attending the high school and there was no question raised or suggestion made that the proceedings were irregular prior to February 25, 1925. In the mean time elections were held, contracts were made, the basement was dug, and the basement walls of cement were built. A school house was purchased to be placed on the walls of the basement, taxes were levied, and the school was organized and operated with the district obligated to pay the teachers for the full year.
The case of Weiderholt v. Lisbon Special School Dist. 45 N.D. 561, 178 N.W. 432, arose over the annexation of territory to the Lisbon Special School District. For a period of nine months no action was taken and no question was raised as to the regularity of the proceedings and this court said: "Where a party is precluded by laches, it matters little how serious may be the defect in the proceedings which he is prone to attack, so long as they are apparently regular. Thus it is even held, that though the law under which a municipal body purports to act in extending the corporate limits be unconstitutional, proceedings thereunder will not be held invalid in favor of one who is precluded by laches from objecting to the proceedings. State ex rel. West v. Des Moines, 96 Iowa, 521, 31 L.R.A. 186, 59 Am. St. Rep. 381, 65 N.W. 818; see also Speer v. Kearney County, 32 C.C.A. 101, 60 U.S. App. 38, 88 Fed. 749."
In the case of Greenfield School Dist. v. Hannaford Special School Dist. 20 N.D. 393, 127 N.W. 499, this court said: "In applying the doctrine of laches or the rule of estoppel by acquiescence, no fixed time will be taken as controlling, but the facts in each particular case must govern the court's decision, and where, as in this case, although but two years have elapsed since the territory in question was annexed to Hannaford special school districts, grave consequences may follow if the plaintiffs are successful in this action. Hence, we think the plaintiffs are estopped from maintaining this action. 28 Cyc. p. 214 and cases cited; People v. Maynard, 15 Mich. 463; Jameson v. People,16 Ill. 257, 63 Am. Dec. 304; Speer v. Kearney County, supra; State ex rel. Walker v. McLean County, 11 N.D. 356, 92 N.W. 388; State *Page 664 
ex rel. Madderson v. Nohle, 16 N.D. 168, 125 Am. St. Rep. 628, 112 N.W. 141; State ex rel. West v. Des Moines, 96 Iowa, 521, 31 L.R.A. 186, 59 Am. St. Rep. 381, 65 N.W. 818; State v. Leatherman, 38 Ark. 81; People ex rel. Atty. Gen. v. Alturas County, 6 Idaho, 418, 44 L.R.A. 122, 55 P. 1067; School Dist. v. State, 29 Kan. 62; Yankton County v. Klemisch, 11 S.D. 170, 76 N.W. 312; State ex rel. Minot v. Willis, 18 N.D. 76, 118 N.W. 820."
The plaintiffs do not claim that the defendants have not expended large sums of money, levied taxes or that they are not doing the things which are alleged as an estoppel, but on the contrary they allege that they are levying taxes, and expending money in the maintenance of said high school, and the action is brought to stop the further expenditure of money. The complaint is supported by the affidavit of E.A. Shirely and the record shows that E.A. Shirely acted continuously on the high schoolboard as a member until February 25, 1925. It further shows that, as to the voting of $12,500 bonds, Mr. Shirely made the statement, "That it did not turn out as he wished, but as long as it did turn out this way, he was for it, that he was in favor of a good high school and of a bigger bond issue." Some of the plaintiffs not only acquiesced in the proceedings but assisted, and none of them objected prior to February 25, 1925.
On the other hand each of the three interested school districts voted affirmatively on all the proceedings, every time there was an opportunity to vote, and if there was opposition the record does not show it. It is apparent from the testimony that there was laches on the part of the plaintiffs, by their inaction and acquiescence in the organization of the high school and they are estopped from questioning the regularity of such organization.
Judgment of the lower court is reversed, with instructions to dismiss the action.
CHRISTIANSON, Ch. J., and JOHNSON, BIRDZELL, and NUESSLE, JJ., concur. *Page 665