2009 ND 180

**Kenneth HAGER, Agathy C. Baker, Irene Streifel, Raymond Hager, Cecelia Parkos and Bernice Bays, Plaintiffs and Appellants,**

v.

**CITY OF DEVILS LAKE, a municipal corporation, Defendant and Appellee.**

No. 20090050.

Supreme Court of North Dakota.

Oct. 13, 2009.

422

Christopher M. McShane and Robert G. Hoy (on brief), Ohnstad Twichell, P.C., West Fargo, N.D., for plaintiffs and appellants.

Daniel L. Gaustad and Ronald F. Fischer (on brief), Pearson Christensen & Clapp, PLLP, Grafton, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Kenneth Hager, Agathy Baker, Irene Streifel, Raymond Hager, Cecelia Parkos, and Bernice Bays (collectively "Hagers") appeal from a judgment and an amended judgment: (1) dismissing their claims against the City of Devils Lake ("City") for inverse condemnation, nuisance, and negligence; (2) determining the City had an irrevocable permissive license to maintain a storm sewer system upon their land; and (3) ordering them to pay a portion of the City's costs. We modify the judgment and, as modified, affirm, concluding: (1) res judicata and collateral estoppel did not preclude the City from raising a statute of limitations defense; (2) the district court did not err in concluding the Hagers' claims were barred by the statute of limitations; (3) the City acquired an easement by estoppel to maintain a storm sewer system upon the Hagers' property; and (4) the district court did not abuse its discretion in awarding costs to the City.

I

[¶ 2] The disputes in this case center upon two parcels of land owned by the Hagers, which the parties have denoted the larger parcel and the smaller parcel. The larger parcel contains approximately 170 acres and lies contiguous to the eastern edge of Hagers' Northdale Subdivision of Devils Lake. The smaller parcel is a 72 foot by 50 foot strip of land within the city limits in Hagers' Northdale Subdivision.

[¶ 3] The Hagers originally owned the land which now comprises Hagers' Northdale Subdivision, as well as the contiguous larger parcel to the east. The Hagers requested the City to construct a storm sewer system to facilitate development of a residential subdivision. In response to the Hagers' request, the City constructed a storm sewer system including two storm water pipelines which diverted storm water onto the larger parcel. The project was completed in 1980 at a cost of approximately $144,000. The City paid $18,000 of these costs, with the remainder assessed against property benefitted by the project, including property owned by the Hagers. The Hagers ultimately developed their land west of the larger parcel into a residential subdivision, called Hagers' Northdale Subdivision, and sold the lots. The Hagers allege that, in 1991, the City installed a culvert and dug drainage ditches on the larger parcel, resulting in additional storm water being discharged onto the larger parcel. The Hagers contend the City's construction and maintenance of the

storm sewer system hindered their use of, and restricted their access to, the larger parcel, resulting in a taking of the property by inverse condemnation.

[¶ 4] The Hagers also contend that, during the summer of 1998, the City entered upon the smaller parcel without their permission and placed municipal utilities on and under the property. They also allege that the City graded the property and made it into a road. They contend that the City's actions constituted a taking of the property by inverse condemnation.

[¶ 5] In 2001, the Hagers brought an action against the City seeking damages for the City's placement of municipal utilities on the smaller parcel, damages for trespass for the City's discharge of storm water onto the larger parcel, and compensation for the City's removal and disposal of the Hagers' personal property from the smaller parcel in 1999. The parties stipulated that only two issues, compensation for removal of the Hagers' personal property on the smaller parcel and whether the City had acquired a prescriptive easement on the larger parcel, would be tried, and all other issues and claims would be dismissed without prejudice. After a bench trial, the district court found that the City had trespassed upon the smaller parcel and removed items belonging to the Hagers, and the court awarded damages of $100, which were offset by a bill the Hagers owed to the City for removing other debris from the property. The court further held that, because the Hagers had requested the City to construct the storm sewer system to aid in the development of their adjoining property, the City's use of the property on the larger parcel was permissive and did not give rise to a prescriptive easement.

[¶ 6] In July 2005, the Hagers brought the present action alleging four claims: (1) inverse condemnation for drainage of storm water onto the larger parcel; (2) nuisance created by drainage of storm water onto the larger parcel; (3) negligent design and construction of the storm sewer system; and (4) inverse condemnation for installation of municipal utilities on and under the smaller parcel. The City counterclaimed, seeking easements for its storm sewer system on the larger parcel and fee simple title to the smaller parcel if the Hagers were successful on their inverse condemnation claim.

[¶ 7] The City moved for summary judgment, seeking dismissal of the Hagers' claims and granting of an irrevocable permissive license upon the larger parcel. The district court concluded the statute of limitations had run on all of the Hagers' claims and ordered the claims dismissed. The court also concluded that the City had an irrevocable permissive license upon the larger parcel to maintain the existing storm sewer system. The City moved for reconsideration for the district court to correct a perceived clerical error and to establish a precise legal description of the portion of the larger parcel subject to the irrevocable license. After a hearing, the court reaffirmed its prior holdings and adopted a metes and bounds description of the property subject to the City's irrevocable license. The court also ordered the Hagers to pay the City's costs in the amount of $13,872.57, and judgment was entered on December 4, 2008. On December 8, 2008, the Hagers filed objections to the taxation of costs and disbursements. On January 30, 2009, the Hagers filed an appeal from the December 4 judgment. The district court subsequently ordered that the taxation of costs be amended, and on March 12, 2009, an amended judgment was entered reducing the costs awarded to the City to $6,936.28. The Hagers filed an amended notice of appeal from both judgments on March 16, 2009.

## II

[¶ 8] The Hagers contend that, because the only defense raised by the City in the first action to the trespass claims on the larger parcel was a prescriptive easement, resolution of that issue in the first case prevents relitigation of the City's liability for inverse condemnation under the doctrines of res judicata and collateral estoppel. Thus, the Hagers contend, the City was barred from raising new defenses based upon the statute of limitations in this case. The Hagers' argument is premised upon a misinterpretation of the effect of a dismissal without prejudice.

[¶ 9] The parties in this case agreed to try only two issues in the first case: compensation for personal property removed from the smaller parcel and whether the City had acquired a prescriptive easement on the larger parcel. The parties expressly stipulated that all other issues and claims, including the trespass claim for damages on the larger parcel, were dismissed without prejudice.

[¶ 10] We outlined the application of res judicata and collateral estoppel in *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 13, 729 N.W.2d 101 (quoting *Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 11, 721 N.W.2d 16):

> Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to [the] parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory.

Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.

[¶ 11] Dismissal of a claim or action without prejudice has no res judicata effect because there has been no decision on the merits and no right or remedy of the parties is affected:

A dismissal without prejudice is, by definition, not res judicata:

> "A dismissal 'without prejudice' allows a new suit to be brought on the same cause of action. The words 'without prejudice', as used in judgment, ordinarily import the contemplation of further proceedings, and, when they appear in an order or decree, it shows that the judicial act is not intended to be res judicata of the merits of the controversy."

Black's Law Dictionary 1603 (6th ed.1990). We have previously held that a dismissal without prejudice has no res judicata effect:

> "A dismissal ' "without prejudice," means that no right or remedy of the parties is affected, the use of the phrase simply shows that there has been no decision of the case upon the merits, and prevents the defendant from setting up the defense of res adjudicata.' "

*Sellie v. North Dakota Insurance Guaranty Ass'n*, 494 N.W.2d 151, 159 (N.D. 1992) (quoting *Olson v. Coalfield School District No. 16*, 54 N.D. 657, 210 N.W. 180, 181–182 (1926)).

Furthermore, the court's order of dismissal clearly indicated the court envisioned further proceedings:

"The Court is in doubt—because of the passage of time—whether it presently has jurisdiction to continue with this proceeding based upon the petition filed in this case dated April 27, 1994."

"Accordingly, in order to resolve such doubt for the benefit of all interested persons (and particularly [Cindy]) the Court does hereby dismiss the petition herein without prejudice to the right of the petitioner to commence a new and separate action based upon the same facts as alleged herein, or those facts plus any new and additional ones having come to the attention of the petitioner."

*In re C.M.*, 532 N.W.2d 381, 382–83 (N.D. 1995). As we further explained in *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 13, 580 N.W.2d 583, "[a]fter a court enters an order of dismissal without prejudice, the action is ended, and there is no longer an action pending before the court."

[¶ 12] The Hagers argue that, because the City had not raised other defenses to their trespass claim in the first action, "[r]esolution of the prescriptive easement issue amounted to adjudication of the liability portion of the claim for trespassing upon the larger parcel." When the district court resolved the prescriptive easement issue, however, the claim for damages for trespass had been dismissed without prejudice and there was no longer a trespass claim pending before the court. *See id.* The court at that point could not determine the liability portion of a claim which was no longer before the court. The only res judicata or collateral estoppel effect of the earlier action arose from the sole related issue actually tried in the prior action: the City would be collaterally estopped to again raise the issue of a prescriptive easement. Beyond that, when the Hagers brought their second action raising inverse

condemnation, nuisance, and negligence claims relating to the discharge of water onto the larger parcel, it was a new action and the City was entitled to raise any and all other defenses it wished, whether raised in the first action or not. If the parties had intended that the City be precluded from raising new defenses if the Hagers brought a subsequent action, they could have explicitly provided so in their stipulation to dismiss without prejudice.

[¶ 13] We conclude the City was not barred from raising defenses based upon the statute of limitations in this case.

III

[¶ 14] The Hagers contend that the district court erred in concluding that their claims were barred by the applicable statutes of limitations.

A

[¶ 15] The Hagers contend that the statutes of limitations on their inverse condemnation, nuisance, and negligence claims relating to the larger parcel have not run because new causes of action, and new limitations periods, arise each time storm water is discharged onto the larger parcel. In support of their argument, the Hagers rely upon *Rynestad v. Clemetson,* 133 N.W.2d 559 (N.D.1965). *Rynestad,* however, is not controlling under the facts in this case.

[¶ 16] Rynestad had sued several neighboring landowners, alleging these landowners through "various ditching operations" had caused excess surface water to flow onto Rynestad's land "in increased volume and in a different manner than they ordinarily would have come upon the plaintiff's land in the natural course of drainage." *Id.* at 562. Rynestad also sued the township supervisors, alleging their failure to maintain and clear ditches along township roads of accumulated soil,

sand, and debris had caused excess water to flow onto Rynestad's land. Rynestad sought an injunction and writ of mandamus ordering the neighboring landowners to fill and level the drainage ditches they had constructed and ordering the township supervisors to open the ditches along the township roads. Rynestad also sought damages for past injuries done to her land by the drainage ditches.

[¶ 17] The district court held Rynestad was not entitled to an injunction or a writ of mandamus and dismissed her claims. This Court reversed, holding that Rynestad was entitled to injunctive relief and a writ of mandamus. The Court ordered the case remanded to the district court with instructions to order the neighboring landowners to "fill drainage ditches which they have constructed across their property" and to order the township supervisors "to maintain the ditches along the township roads described in the plaintiff's complaint so as to allow the surface water to follow its natural course of drainage." *Id.* at 566. In so holding, this Court addressed the defendants' statute of limitations defense:

All of the defendants have set up the affirmative defense of statute of limitations, contending that the plaintiff's cause of action, if any she had, is barred by such statute. We do not believe that the plaintiff's action is so barred. Improperly draining surface water onto the land of another is an injury for which action may be maintained by the person having title to, or possession of, the property onto which the water is drained, at the time the injury was caused. If damages are recurrent or continuing, the remedy is by successive actions from time to time so long as such improper draining continues and the noxious condition is maintained. 93 C.J.S. Waters § 127a, p. 827.

*Rynestad,* 133 N.W.2d at 564. The section of Corpus Juris Secundum relied upon by the Court in *Rynestad* is currently found at 93 C.J.S. *Waters* § 282 (2001) (footnotes omitted), and provides:

Improperly draining surface water on the land of another or obstructing its flow off the land of another is an injury for which an action may be maintained by a party having title to, or possession of, the property affected. Successive suits may be maintained from time to time if the action is continuing or recurrent, or a single action may be maintained if the obstruction is permanent.

. . .

If the damages are continuing and recurrent, the remedy is by successive suits, from time to time, as long as the noxious condition is maintained. If the injury is permanent, a single action may be maintained, provided the nature, extent, and certainty of future damages can be ascertained, measured, and compensated. In such event there can be no recovery for a recurring damage from the same cause.

[¶ 18] The Hagers' arguments in this case, and reliance upon the rule announced in *Rynestad,* fail to acknowledge the significant distinction between permanent and temporary injuries. The general rule is succinctly stated in 78 Am.Jur.2d *Waters* § 388 (2002) (footnotes omitted):

Whether the injury was permanent or temporary is the determinative factor in commencing the statute of limitations in damage actions from flooding caused by construction.

In the case of a permanent injury resulting from the construction or operation of a permanent structure, such injury gives rise to but one cause of action, which covers all damages, past, present, and prospective.

[¶ 19] This Court recognized the distinction between permanent and temporary injuries from diversion of excess water onto land in *Peacock v. Sundre Twp.*, 372 N.W.2d 877, 879 (N.D.1985) (citations omitted):

> The Peacocks accurately describe the general rule that recurring trespasses give rise to repeated actions to recover for successive damage. However, the general rule is not controlling when a party elects to treat its damages as permanent rather than temporary and recurring.

[¶ 20] Professor Dobbs has explained the underlying rationale and application of the rule:

> *Permanent Damages for Permanent Invasions*
>
> When an interest in land is invaded by a nuisance or trespass that will continue to cause harm indefinitely into the future, general damages are measured by the diminished value rule. Even though harm will continue, its future effects are captured all at one time by this measure, which gives to the plaintiff the loss in value attributable to the future continuance of the invasion. In a sense, all of the harm is completed when the nuisance first occurs, because the diminished land value is all measurable from that time. In contrast, if an invasion is temporary, general damages will be measured for the harm that has been done up until judgment, with more damages to come in later suits if they are necessary. For example, diminished value that will continue only for one year can be measured by the diminished rental value of the land for one year.
>
> *Res Judicata Rules for Permanent Harms*
>
> This way of thinking about permanent nuisances and trespasses implies rules for the statute of limitations and for res judicata. If the nuisance is permanent, all harm is done when the nuisance first occurs, and there is but one cause of action for the nuisance, not a series of potential actions. An example is the harm caused when the defendant builds an embankment that periodically causes water to flood the plaintiff's land. Where the embankment is considered to be a permanent nuisance, all of that harm is legally measurable in one cause of action, even though the harm will continue indefinitely into the future. If the plaintiff sues on that cause of action, res judicata doctrines will prevent a second suit later (unless there is a new and greater invasion). By the same token, if permanent damage is done, the owner at the time has the claim for that damage, not a subsequent purchaser. The same sort of analysis can be applied to inverse condemnation or eminent domain cases.
>
> *Statute of Limitations Rules for Permanent Harms*
>
> Similarly, the cause of action will accrue for statute of limitations purposes when the permanent nuisance or trespass first occurs. Given a two-year statute, the plaintiff will be barred after two years from the first injury, even though the nuisance is still in effect and still causing harm at the time suit is filed. Inverse condemnation suits for informal "takings" by public entities can be analyzed in the same fashion.

1 Dan B. Dobbs, *Law of Remedies* § 5.11(1) (2d ed.1993).

[¶ 21] The Hagers contend that North Dakota law does not recognize the distinction between permanent and temporary injuries, and that *Rynestad* creates a bright-line rule that, no matter the nature of the cause of the diversion of water, each time water flows in an unnatural manner as a result of the actions of upstream landowners a new cause of action accrues

and a new limitations period begins to run. The Hagers do not argue that the construction causing the discharge of storm water onto their land is not permanent, but claim the permanent nature of the structure is irrelevant under *Rynestad.* The Hagers assert that *Rynestad* applies to permanent obstructions because, in that case, "the Court ruled the statute of limitations starts over each time water flows through the improvements made by the defendants and onto the land of the plaintiff despite the fact the ditches and drains installed by the defendants were presumably permanent."

[¶ 22] The Hagers have misread *Rynestad* when they suggest the ditches and drains in that case were "presumably permanent." This Court never characterized the ditches as permanent, and in fact the Court expressly ordered that the ditches which had been constructed by neighboring landowners be filled, and that the ditches along the township roads be properly maintained, to allow water to follow its natural course of drainage. *Rynestad,* 133 N.W.2d at 566. When a plaintiff seeks injunctive relief and a writ of mandamus, and the court orders that the property be restored to its natural condition to allow the original, natural course of drainage, the improvements cannot be considered permanent. *See* 1 Dobbs, *supra,* § 5.11(2) ("[i]f the court has already compelled an abatement of the nuisance, it will be obvious that the nuisance is not a permanent one").

[¶ 23] In this case, the alleged dispersal of water upon the Hagers' property is caused by a permanent storm sewer system which has been in place for nearly thirty years and which was built at the Hagers' request. While it may be logical to allow recurring causes of action for temporary conditions which can be remedied or removed through injunctive relief, as in *Rynestad,* it would be wholly illogical to allow repeated causes of action when the instrumentality causing the flooding is a permanent structure which provides substantial, continuous benefits to the general public, as in this case. When the cause of the injury is a permanent structure and injunctive relief is not appropriate or practical, the injury gives rise to only one cause of action, not a series of actions. *See* 1 Dobbs, *supra,* § 5.11(1); 78 Am. Jur.2d *Waters* § 388 (2002). Furthermore, the Hagers' pleadings recognize the permanent nature of the alleged damage to their property, as evidenced by their allegation that the flooding has caused an actual physical taking of a part of the larger parcel. *See Peacock,* 372 N.W.2d at 879.

[¶ 24] We conclude that, when water is diverted onto property by construction or operation of a permanent structure, there is only one cause of action, successive suits may not be maintained, and the statute of limitations begins to run when harm first occurs. We therefore conclude that *Rynestad* does not apply in this case.

B

[¶ 25] The district court concluded that the Hagers' tort claims based upon nuisance and negligence accrued, at the latest, in 1992 when the Hagers had notice of installation of the storm sewer and additional ditching on the larger parcel. The court applied the three-year statute of limitations under N.D.C.C. § 32–12.1–10 for actions against a political subdivision and held the statute had run in 1995, before this action was commenced in 2005.

[¶ 26] Under N.D.C.C. ch. 32–12.1, a political subdivision may, under appropriate circumstances, be liable for money damages for injuries proximately caused by the negligence or wrongful acts of its employees. *See* N.D.C.C. § 32–12.1–03(1).

A city is a political subdivision covered by the statute. N.D.C.C. § 32–12.1–02(6)(a). Any action brought under N.D.C.C. ch. 32–12.1 "must be commenced within three years after the claim for relief has accrued." N.D.C.C. § 32–12.1–10. This Court has concluded that N.D.C.C. § 32–12.1–10 "specifies the maximum time in which an action may be brought against a political subdivision" under the chapter. *Dimond v. State ex rel. State Bd. of Higher Educ.*, 2001 ND 208, ¶ 10, 637 N.W.2d 692 (quoting *O'Fallon v. Pollard*, 427 N.W.2d 809, 811 (N.D.1988)).

[¶ 27] The Hagers contend the district court erred in concluding that their tort claims accrued in 1992, arguing that *Rynestad* applies and a new cause of action accrues each time storm water is discharged upon the larger parcel. We have rejected that argument.

[¶ 28] We conclude the district court did not err in determining the Hagers' tort claims accrued in 1992 and in applying the three-year statute of limitations in N.D.C.C. § 32–12.1–10 to those claims. Accordingly, the statute of limitations on the tort clams expired in 1995 and the district court did not err in dismissing the Hagers' nuisance and negligence claims.

C

[¶ 29] The Hagers contend the district court erred in concluding that their inverse condemnation claims were barred by the statute of limitations. They allege that *Rynestad* applies to create a new cause of action, and a new statute of limitations period, each time water flows onto the larger parcel, and alternatively argue that the district court erred in applying a six-year statute of limitations to the inverse condemnation claims. As previously noted, we have rejected application of *Rynestad* under the circumstances presented in this case.

[¶ 30] The district court, noting that this Court has treated inverse condemnation claims as contract actions, applied the six-year statute of limitations found in N.D.C.C. § 28–01–16(1), which provides:

The following actions must be commenced within six years after the claim for relief has accrued:

1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104.

The Hagers contend that N.D.C.C. § 28–01–16(1) should not be applied in an inverse condemnation action alleging an actual taking of property, and that the only applicable limitations period is the twenty-year period for acquisition of title to property by adverse possession. *See* N.D.C.C. §§ 28–01–04 and 28–01–05.

[¶ 31] The Hagers rely upon *Schilling v. Carl Twp.*, 60 N.D. 480, 235 N.W. 126 (1931), to support their argument. In *Schilling*, the township built a road upon Schilling's property without commencing condemnation proceedings or paying for the land, and Schilling brought an inverse condemnation action seeking compensation under the constitutional provision guaranteeing compensation for property taken or damaged for public use. *See* N.D. Const. art. I, § 16 (previously numbered N.D. Const. § 14). This Court noted that the period for acquiring property by adverse possession was twenty years, while actions arising upon contract or for trespassing carried a six-year limitations period. *Schilling*, 60 N.D. at 486–87, 235 N.W. at 129. This Court concluded that the twenty-year limitations period for adverse possession applied to an inverse condemnation action brought under the constitutional provision:

The court holds that the period for limitation of action is the period set for

adverse possession, which under our statute is twenty years. It will be noticed that this is the period of limitation for obtaining a road by prescriptive right, and thus both are brought into harmony.

*Id.* at 492, 235 N.W. at 131. In so holding, this Court stated:

Section 14 of the Constitution, before quoted, is a limitation on [the state's] power to take or damage private property for public use, requiring just compensation to be first made; but a failure to do so does not authorize suit against itself "respecting the title to property, or arising upon contract". . . .

*Id.* at 488, 235 N.W. at 129. Thus, the holding in *Schilling* was premised, at least in part, upon the assumption that the constitutional provision did not authorize an action against a governmental entity "arising upon contract."

[¶ 32] Our subsequent inverse condemnation jurisprudence interpreting the contours of the right to compensation under the constitutional provision has expressly recognized that the right to compensation is premised upon an implied contract, and this Court has thus applied the six-year contract statute of limitations in such cases. *See Cady v. North Dakota Dep't of Transp.*, 472 N.W.2d 467, 471 (N.D.1991); *Eck v. City of Bismarck*, 283 N.W.2d 193, 199 (N.D.1979); *Maragos v. City of Minot*, 191 N.W.2d 570, 572 (N.D.1971). We have recently reaffirmed in *Aasmundstad v. State*, 2008 ND 206, ¶ 15, 763 N.W.2d 748, that "the constitutional guarantee for inverse condemnation constitutes an implied contract to compensate for damages caused by a public entity."

[¶ 33] The Hagers argue that our prior cases applying the six-year contract statute of limitations have not involved an actual taking of the land, but have sought only damages for injuries to property caused by governmental action. They argue that different statutes of limitations may govern depending upon whether there has been an actual physical taking, as opposed to merely an injury to adjacent property. The Court in *Schilling*, 60 N.D. at 492, 235 N.W. at 131, noted that courts in other jurisdictions had recognized such a distinction.

[¶ 34] We decline to recognize such a distinction in this state. Our prior cases have expressly concluded that, under N.D. Const. art. I, § 16, "the obligation of the state to pay just compensation to the owner *for the taking of* or for damages to his property is, in effect, a contract to compensate for the damages." *Eck*, 283 N.W.2d at 199 (emphasis added) (quoting *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355, 358 (N.D.1968)); *see also Maragos*, 191 N.W.2d at 572. These cases make it clear that we look to the legal theory undergirding the cause of action to determine which statute of limitations applies. For either a taking case or a non-taking case, an inverse condemnation action under N.D. Const. art. I, § 16, is premised upon the governmental entity's implied promise to compensate the owner of property taken or damaged for public use. Therefore, the action is one "upon a contract, obligation, or liability, express or implied," and the six-year statute of limitations under N.D.C.C. § 28–01–16(1) governs.

[¶ 35] To the extent that *Schilling* was premised upon the assumption that the constitutional provision did not "authorize suit against" a governmental entity "arising upon contract," *Schilling*, 60 N.D. at 488, 235 N.W. at 129, the theoretical underpinnings of *Schilling* have been eroded by this Court's subsequent cases holding that an inverse condemnation action based upon N.D. Const. art. I, § 16, is an action upon an implied contract for compensation

that is governed by the six-year statute of limitations for an action upon contract. Therefore, the holding in *Schilling* that an inverse condemnation action brought under N.D. Const. art. I, § 16, is governed by the twenty-year limitations period for adverse possession is overruled.

[¶ 36] The Hagers also cite to *Nagel v. Emmons County North Dakota Water Res. Dist.*, 474 N.W.2d 46 (N.D.1991), for their assertion that an action arising from a physical taking is only limited by a prescriptive easement. However, *Nagel* was not an inverse condemnation case, but rather Nagel sought an injunction against the County and Water Resource District to enjoin them from causing his land to be flooded and to collect money damages for harm to his land from previous flooding. *Id.* at 47. The issue in the Nagel action was whether the County could obtain an easement by prescriptive use under North Dakota law. Our Court concluded that an easement may be obtained by the County by prescriptive use and that under the facts of the case the County had acquired through its adverse use of Nagel's property a prescriptive easement. *Id.* at 49. The twenty-year prescriptive period was not applied as a statute of limitations to bar Nagel's injunction action. By contrast, in *Maragos* and *Cady* this Court held that an inverse condemnation action is an action arising upon contract and is governed by the six-year statute of limitations in N.D.C.C. § 28–01–16(1).

[¶ 37] We note that adoption of the Hagers' contentions and application of the twenty-year limitation period for adverse possession would lead to an anomalous result in this case. The district court held in the first action between the parties that, because the Hagers had requested the City to construct the storm sewer system, the City's use of property on the larger parcel was permissive and did not give rise to a prescriptive easement. If the City's use is not deemed to be adverse, the twenty-year period for prescriptive use would never begin to run and there would effectively be no statute of limitations for the Hagers' inverse condemnation claims.

[¶ 38] The purpose of a statute of limitations is to prevent plaintiffs from sleeping on their legal rights and bringing stale claims to the detriment of defendants. *Tarnavsky v. McKenzie County Grazing Ass'n*, 2003 ND 117, ¶ 9, 665 N.W.2d 18; *Hoffner v. Johnson*, 2003 ND 79, ¶ 9, 660 N.W.2d 909 (quoting *Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D.1986)). We have noted it is "highly unusual" to have a cause of action without a limitation period:

> Moreover, the plaintiffs' argument would lead to a highly unusual and unintended result. The public policy behind statutes of limitation is to prevent the litigation of stale claims when, through the lapse of time, evidence regarding the claim has become difficult to procure or even lost entirely. Under the plaintiffs' construction of the statute, if a seller made a rescission offer which was accepted and later withdrawn, there would be no limitation period for the purchaser who accepted the offer to bring an action to recover under N.D.C.C. § 10–04–17. In effect, the Legislature would have created an action for which there is no limitation period. If the Legislature intended to permit purchasers who received rescission offers to bring an action at any time, it could have included language to that effect. The statute, when its parts are read together in a reasonable manner, does not allow plaintiffs an unlimited amount of time to bring suit.

*Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 21, 590 N.W.2d 454 (citation omitted).

[¶ 39] We conclude the district court did not err in determining that the six-year statute of limitations for contract actions under N.D.C.C. § 28–01–16(1) applied to the Hagers' inverse condemnation claims.

### D

[¶ 40] The district court concluded that the Hagers' inverse condemnation claim for the larger parcel accrued in 1991 when the City installed a culvert and dug drainage ditches. The Hagers do not challenge that determination. Thus, the six-year statute of limitations expired in 1997, and the district court did not err in concluding the Hagers' claim was barred.

[¶ 41] On the smaller parcel, the district court found that the taking occurred, and the inverse condemnation action accrued, in the summer of 1998. The Hagers contend, however, that they did not know of the City's actions until sometime in 1999, and therefore their commencement of this action in 2005 fell within the six-year statute of limitations.

[¶ 42] In concluding that the Hagers' inverse condemnation action on the smaller parcel accrued at the time of the taking in 1998, the district court applied N.D.C.C. § 32–15–23, which provides:

> For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the taking and its actual value at that date shall be the measure of compensation for all property actually to be taken, and the basis of damages to the property not actually taken, but injuriously affected, in all cases when such damages are allowed as provided in section 32–15–22. The time of the taking shall be determined by the court.

Although the statute expressly states that the right to compensation "shall be deemed to have accrued at the date of the taking," the Hagers argue that the first clause of the statute limits the meaning of the accrual language, contending that the date of the taking "is the date of accrual for damage purposes, not the date of accrual for the purposes of the statute of limitations." We do not read the statute so narrowly. If the legislature intended to say only that the property owner was entitled to recover the value of the property as of the date of the taking, it easily could have said so without including the phrase "the right thereto shall be deemed to have accrued at the date of the taking." Furthermore, it would be anomalous to set the value of damages as of a date when no cause of action had yet accrued. We read the statute as the district court did: The right to compensation, and to bring an inverse condemnation action to recover such compensation, accrues on the date the property is taken. *See Maragos*, 191 N.W.2d at 572 (inverse condemnation action "accrued when the property was invaded and damaged, [and] the plaintiffs' cause of action and damage, at the latest, accrued . . . when the project was completed").

[¶ 43] We conclude the district court did not err in determining that the Hagers' inverse condemnation action on the smaller parcel was barred by the six-year statute of limitations.

### IV

[¶ 44] The Hagers contend the district court erred in concluding that the City had an irrevocable permissive license upon the larger parcel to maintain its existing storm sewer system.

[¶ 45] The Hagers argue that an irrevocable permissive license is not recognized under North Dakota law, rely-

ing upon *Hector v. Metro Centers, Inc.,* 498 N.W.2d 113 (N.D.1993). In *Hector,* at 117, this Court expressly rejected "the proposition that a license executed by the expenditure of funds is irrevocable," explaining:

> In this state, "[a] license is merely a permit or privilege to do what otherwise would be unlawful." *Lee v. North Dakota Park Service,* 262 N.W.2d 467, 470 (N.D.1977). A license "conveys no estate in affected property, and is generally revocable at will without notice." 262 N.W.2d at 471, *quoting* 25 *Words and Phrases,* "License", p. 231 (1961) [citing *Strandholm v. Barbey,* 145 Or. 427, 26 P.2d 46, 51 (1933)]. A license is not property "requiring just compensation for its taking." *Lee v. North Dakota Park Service, supra,* 262 N.W.2d at 478. "[W]here nothing more than a mere license appears, it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements." *Johnson v. Bartron,* 23 N.D. 629, 633, 137 N.W. 1092, 1093 (1912). Our case law thus supports the proposition that an initial consensual license may be revoked.

[¶ 46] The Hagers' interpretation of North Dakota law governing licenses is correct. In this State a license is revocable, and the district court's characterization of the City's right to maintain its existing storm sewer system as an "irrevocable permissive license" was erroneous. That does not, however, end our inquiry because, although the district court erred in the terminology it used, its underlying rationale and ultimate conclusion were correct. The court merely employed the wrong vehicle to get there. *Cf. State ex rel. K.B. v. Bauer,* 2009 ND 45, ¶ 10, 763 N.W.2d 462 (we "will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning" (quoting *Sanders v. Gravel Prods., Inc.,* 2008 ND 161, ¶ 9, 755 N.W.2d 826)).

[¶ 47] In concluding that the City had an irrevocable permissive license to maintain the storm sewer system on the larger parcel, the district court concluded it would be "impossible" to apply the rule of *Hector* to this case "because of the permanency of the structure and the potential harm to many individuals if the drainage system is not maintained." The court stressed that the Hagers had requested the City to build the storm sewer system, the system was a permanent structure, and the "installation of the drainage system came at a large expense to both the City and its citizens." Under North Dakota law, the factors cited by the district court give rise to an easement by estoppel, not an irrevocable permissive license.

[¶ 48] Creation of an easement by estoppel has long been recognized by this Court. *See Home of Economy v. Burlington N. Santa Fe R.R.,* 2007 ND 127, ¶¶ 17–20, 736 N.W.2d 780; *Hille v. Nill,* 58 N.D. 536, 548, 226 N.W. 635, 639 (1929). The Supreme Court of Colorado has succinctly defined an easement by estoppel:

> A court can imply an easement created by estoppel when 1) the owner of the servient estate "permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked," 2) the user substantially changed position in reasonable reliance on that belief, and 3) injustice can be avoided only by establishment of a servitude.

*Lobato v. Taylor,* 71 P.3d 938, 950–51 (Colo.2002) (en banc) (quoting Restate-

ment (Third) of Property § 2.10 (2000)); *see also* 25 Am.Jur.2d *Easements and Licenses* § 14 (2004) ("an easement by estoppel is created when a landlord voluntarily imposes an apparent servitude on his or her property, and another person, acting reasonably, believes that the servitude is permanent and in reliance upon that belief does something that he or she would not have done otherwise or refrains from doing something that he or she would have done otherwise").

[¶ 49] In *Hille,* 58 N.D. at 547–48, 226 N.W. at 639 (citations omitted), this Court concluded that an easement by estoppel had been created when a party (Hille) erected a house and other buildings in reliance upon the representation by a neighboring landowner (Schuldheisz) that he would have use of an adjacent street:

> It is true that, when Schuldheisz sold to Hille, he referred to the plat and told Hille that the purchase carried with it the right to the use of Mix street; but this agreement was not put in the deed and was not reduced to writing. The fact that it was agreed between them that Hille should erect and maintain a gate at the east end of the street, and that Schuldheisz should erect and maintain one at the west end of the street, negatives any belief on Hille's part and any intention on Schuldheisz's part that the street should be open to the general public use. Nevertheless it resulted in the creation of an easement in favor of Hille. Though an easement may not be created by parol, one may be created by estoppel. Here Hille bought his land in the light of Schuldheisz's representation that he would have a way over Mix street to and from Kulm. Pursuant to the agreement between himself and Schuldheisz, Hille, in reliance thereon, erected his buildings with reference to this street; Schuldheisz knowing and acquiescing. He used it for many years in

the manner contemplated by the agreement. This use was more than merely permissive. Under the circumstances, for Schuldheisz to deny the right of such use of the street to Hille would work a fraud upon the latter, and so he was estopped to do so.

*See also Home of Economy,* 2007 ND 127, ¶ 18, 736 N.W.2d 780 ("a party claiming an easement by estoppel must show a representation was communicated to the promisee, the representation was believed, and there was a reliance upon the communication").

[¶ 50] The undisputed facts in this case establish all of the elements of an easement by estoppel. The Hagers requested that the City construct a storm sewer system, thereby allowing them to develop, subdivide, and sell their adjoining property. It was certainly foreseeable that any such construction would be permanent. Thus, the Hagers permitted the City to use part of the larger parcel "under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked." *Lobato,* 71 P.3d at 951 (quoting Restatement (Third) of Property § 2.10 (2000)). The City "substantially changed position in reasonable reliance on that belief," *Lobato,* at 951, when it subsequently constructed and maintained the requested storm sewer system, at significant expense to the City and its citizens. Finally, "injustice can be avoided only by establishment of a servitude." *Id.* This is a permanent storm sewer system that has been in place for nearly thirty years, and which provides substantial, continuous benefits to the public. There is no suggestion that the storm sewer system can be removed or moved to another location. Under these circumstances, we agree with the district court that revocation of the City's right to main-

tain the system in its present form would be "impossible." We therefore conclude that the City has an easement by estoppel to maintain the storm sewer system upon the larger parcel.

[¶ 51]   We caution, however, as did the district court, that the City's right to maintain the storm sewer system is limited to maintenance "in the substantively same nature" as its current usage.   The district court adopted a metes and bounds description of the portion of the larger parcel subject to the City's use, and any extension or expansion of the storm sewer system beyond that description would exceed the City's easement.

[¶ 52]   The judgment is modified to provide that the City has an easement by estoppel, rather than an irrevocable permissive license, in the described property within the larger parcel.

## V

[¶ 53]   The Hagers argue that the district court erroneously taxed costs against them, contending that N.D.C.C. § 32–15–32 precludes the award of costs against a landowner claiming a taking of property in an inverse condemnation action.

[¶ 54]   The district court originally ordered the Hagers to pay the City's costs in the amount of $13,872.57.   The Hagers objected, contending that N.D.C.C. § 32–15–32 precluded an award of costs in an inverse condemnation action.   The district court agreed that the statute barred assessment of costs against the Hagers for their inverse condemnation claims, but noted that the Hagers had brought two tort claims against the City in addition to the two inverse condemnation claims.   The court therefore concluded costs could be taxed against the Hagers on the tort claims, but not on the inverse condemnation claims.   The court accordingly award-

ed the City one half of its costs, in the amount of $6,936.28.

[¶ 55]   This Court has concluded that an inverse condemnation action is governed by the eminent domain provisions of N.D.C.C. ch. 32–15.   *Arneson v. City of Fargo*, 331 N.W.2d 30, 38 (N.D.1983).   We have therefore applied N.D.C.C. § 32–15–32, governing taxation of costs in eminent domain proceedings, to inverse condemnation claims.   *See Gissel v. Kenmare Twp.*, 512 N.W.2d 470, 476–77 (N.D.1994); *Arneson*, at 38–39.   In *City of Jamestown v. Leevers Supermarkets, Inc.*, 552 N.W.2d 365, 375 (N.D.1996), this Court held that the cost-shifting provisions in N.D.C.C. § 32–15–32 are specific and govern eminent domain proceedings, and the general cost-shifting provisions of N.D.R.Civ.P. 54(e) and N.D.C.C. § 28–26–06 do not apply.

[¶ 56]   The Hagers contend that, because N.D.C.C. § 32–15–32 precludes an award of costs to the City in an inverse condemnation action, no costs should be allowed on any of their claims because the "root" of all of their claims in this case was the "taking" of the property.   Assuming, without deciding, that N.D.C.C. § 32–15–32 precludes an award of costs against a plaintiff landowner in an inverse condemnation action, we do not accept the Hagers' invitation to extend the reach of N.D.C.C. ch. 32–15 to tort-based causes of action which happen to involve the same property as an inverse condemnation action.   The Hagers tort claims were not "rooted" in any taking, but were based upon the independent grounds of nuisance and negligence.   They were actions and claims for relief entirely separate and distinct from the inverse condemnation claims, and the City was required to muster separate defenses to each claim.   We reject the Hagers' contention that joining the tort claims with inverse condemnation claims preclud-

ed taxation of costs for the separate tort claims under N.D.R.Civ.P. 54(e) and N.D.C.C. § 28–26–06. The district court did not err in concluding it could tax costs for the tort claims against the Hagers.

[¶ 57] The Hagers also challenge the amount of costs taxed, particularly expert witness fees. An award of costs, including expert witness fees, lies within the sound discretion of the district court and will not be disturbed on appeal unless an abuse of discretion is shown. *See* N.D.C.C. §§ 28–26–06(5) and 28–26–10; *Nesvig v. Nesvig*, 2006 ND 66, ¶¶ 33–35, 712 N.W.2d 299; *Young v. Young*, 1998 ND 83, ¶ 8, 578 N.W.2d 111. The district court abuses its discretion only if it acts in an arbitrary, unreasonable, or unconscionable manner, or it if misinterprets or misapplies the law. *E.g., In re Guardianship of D.M.O.*, 2008 ND 100, ¶ 14, 749 N.W.2d 517; *Uren v. Dakota Dust–Tex, Inc.*, 2002 ND 81, ¶ 31, 643 N.W.2d 678. The district court did not abuse its discretion in awarding costs against the Hagers.

VI

[¶ 58] We have considered the remaining issues and arguments raised by the parties and find them to be unnecessary to our decision or without merit. We modify the judgment to provide that the City has an easement by estoppel, rather than an irrevocable permissive license, to maintain its existing storm sewer system upon the larger parcel. The judgment as modified is affirmed.

[¶ 59] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.